Omar Ahmed ALI, also known as Omar Abdel Rahman, also known as Omar Abdel Rachman, Petitioner–Appellant,

v.

Janet RENO, Attorney General of the United States, Respondent–Appellee.

No. 853, Docket 93–2553.

United States Court of Appeals, Second Circuit.

Argued Jan. 11, 1994.

Decided April 18, 1994.

Barbara A. Nelson, New York City (Nelson & Turkhud, of counsel), for petitioner-appellant.

Gabriel W. Gorenstein, Asst. U.S. Atty., New York City (Mary Jo White, U.S. Atty. for the Southern Dist. of New York, Claude M. Millman, Diogenes P. Kekatos, Asst. U.S. Attys., of counsel), for respondent-appellee.

Before: MINER and MAHONEY, Circuit Judges, and RESTANI, Court of International Trade Judge.*

RESTANI, Judge:

Petitioner–Appellant Omar Ahmed Ali ("appellant") filed two petitions for writ of habeas corpus in the United States District Court for the Southern District of New York on July 9 and 12, 1993. His first petition alleged that his parole from the custody of the Immigration and Naturalization Service ("INS") pending a final determination of excludability was improperly revoked without a

* Hon. Jane A. Restani of the United States Court of International Trade, sitting by designation.

hearing.[1] Appellant argued in the second petition that the rescission of his status as a permanent resident of the United States and his subsequent exclusion from the country violated statutory and regulatory procedures, as well as his constitutional rights. The district court denied both petitions. *Ali v. Reno*, 829 F.Supp. 1415, 1437 (S.D.N.Y.1993). We affirm.

## BACKGROUND

Appellant, an Egyptian citizen, is a blind Islamic cleric in his mid-fifties. He was granted permanent residence in the United States as a minister of religion on April 8, 1991. In June 1991, appellant went on a religious pilgrimage to Saudi Arabia, returning to the United States on July 31, 1991. INS permitted appellant to enter the country on a contingent basis, *i.e.*, "paroled" him, pending the completion of INS' inspection. *See* 8 C.F.R. § 235.3(c) (1991) ("Any alien [with documents] who appears to the inspecting officer to be inadmissible ... may be detained, paroled, or paroled for deferred inspection....").

In January 1992, while appellant's inspection was still pending, a district director of the INS notified appellant of INS' intent to rescind his status as a permanent resident. The notification alleged that at the time appellant obtained permanent resident status, he should have been excluded from the United States on the grounds that he: 1) practiced polygamy; 2) was convicted of falsifying a check, which constitutes a crime of moral turpitude; and 3) misrepresented material facts regarding his marital and criminal background on his application for permanent residence.

Appellant replied by letter on January 17, 1992, asking for 60 days to respond to the INS notice and requesting copies of documentation supporting INS' allegations. On March 6, 1992, based on the lack of formal response, the district director rescinded appellant's status as a permanent resident. Appellant was then notified that exclusion proceedings would soon be commenced.

At an exclusion hearing on May 14, 1992, appellant conceded that 1) he was properly in exclusion proceedings; 2) he was excludable as an immigrant not in possession of a valid visa or other documentation permitting entry; and 3) he failed to file a proper answer to the notice of intent to rescind his status as a permanent resident. *Ali*, 829 F.Supp. at 1421. Appellant then applied for political asylum and withholding of deportation based on his fears of persecution by the Egyptian government.

Upon request by the immigration judge considering the asylum application, the Bureau of Human Rights and Humanitarian Affairs of the United States Department of State issued confidential and non-confidential reports of appellant's activities. The non-confidential report characterized appellant as the leader of an Islamic fundamentalist terrorist organization responsible for the assassinations of former Egyptian president Anwar Sadat and other high-level political leaders of Egypt. The Department of State recommended that appellant's application for political asylum be denied.

On March 16, 1993, the immigration judge found appellant to be excludable from the United States and denied the request for asylum. The immigration judge refused to review the district director's decision to rescind appellant's permanent resident status on the ground that he lacked jurisdiction. Based on the outcome of the proceedings, INS revoked appellant's parole status on July 2, 1993. The Board of Immigration Appeals upheld the immigration judge's decision and issued a final order of exclusion on July 9, 1993. The appeal of the district court's denial of appellant's petitions for writ of habeas corpus is now before us.

## DISCUSSION

 This case presents questions of the interpretation of the Immigration and Nationality Act ("the Act") and the INS regulations promulgated pursuant to the Act. Where there is no ambiguity in the statute, the plain language controls. *Chevron U.S.A. Inc. v. Natural Resources Defense Council,*

---

1. Appellant does not raise this issue on appeal.

*Inc.,* 467 U.S. 837, 842–43, 104 S.Ct. 2778, 2781–82, 81 L.Ed.2d 694 (1984). Lingering ambiguities in a statute concerning the forfeiture of residence in this country should be resolved in favor of the alien. *See INS v. Cardoza–Fonseca,* 480 U.S. 421, 449, 107 S.Ct. 1207, 1222, 94 L.Ed.2d 434 (1987) (construing deportation statute); *INS v. Errico,* 385 U.S. 214, 225, 87 S.Ct. 473, 480, 17 L.Ed.2d 318 (1966) (same); *Vargas v. INS,* 938 F.2d 358, 363 (2d Cir.1991) (same). On the other hand, a court will accord substantial deference to an agency's construction of regulations promulgated pursuant to a statutory scheme entrusted to the agency's administration. *Lyng v. Payne,* 476 U.S. 926, 939, 106 S.Ct. 2333, 2341–42, 90 L.Ed.2d 921 (1986); *Chevron,* 467 U.S. at 843–44, 104 S.Ct. at 2781–82.

## A. Rescission Proceedings

The Act provides that

> [i]f, at any time within five years after the status of a person has been otherwise adjusted ... to that of an alien lawfully admitted for permanent residence, it shall appear to the satisfaction of the Attorney General that the person was not in fact eligible for such adjustment of status, the Attorney General shall rescind the action taken granting an adjustment of status ... and the person shall thereupon be subject to all provisions of this chapter to the same extent as if the adjustment of status had not been made.

8 U.S.C. § 1256(a) (1988). An alien applying for permanent residence under § 245 of the Act must be eligible for an immigrant visa. *Id.* § 1255(a) (1988). The Act specifies certain categories of ineligible persons, including polygamists, persons convicted of crimes of moral turpitude, and persons who have procured a benefit under the immigration laws by means of fraud or willful misrepresentation. 8 U.S.C. § 1182(a)(9), (11), (19) (1988) (current version at 8 U.S.C. § 1182(a)(2)(A), (6)(C), (9)(A) (Supp. IV 1992)).

The regulations provide that INS must commence rescission proceedings by serving a notice of intention to rescind containing specific allegations against the resident alien. 8 C.F.R. § 246.1 (1992). The notice must also inform the alien of the right to submit within thirty days an answer under oath rebutting the allegations or a request for a hearing. *Id.* Moreover,

> if no answer is filed within the thirty-day period, or if no hearing is requested within such period, ... the district director shall rescind the adjustment of status previously granted, and no appeal shall lie from his decision.

*Id.* § 246.2 (1992). If the alien either files an answer or requests a hearing, a hearing will be held. *Id.* § 246.3 (1992).

In January 1992, within five years of granting appellant permanent residency, INS sent appellant a notice of intention to rescind his permanent resident status. The notice alleged that appellant was a polygamist convicted of crimes of moral turpitude who had made misrepresentations on his application for permanent residence. The notice also informed appellant of his right to submit an answer stating the reasons why rescission should not be made, as well as his right to request a hearing.

■ On January 17, 1992, appellant's counsel replied by letter requesting an extension of time and the production of documents. An attorney subsequently retained by appellant conceded before the immigration judge that a proper answer had not been filed within the time allotted. Appellant is bound by this admission. *In re Velasquez,* 19 I. & N. Dec. 377, 382 (BIA 1986) ("Absent egregious circumstances, a distinct and formal admission made before, during, or even after a proceeding by an attorney acting in his professional capacity binds his client as a judicial admission.").

■ Appellant nonetheless attempts to characterize the January 17 letter as an implied request for a hearing. He argues that the regulations do not require that a specific request for a hearing be made, only that the alien put INS on notice that the matter is contested. Contrary to appellant's contentions, the regulations state clearly that "if no answer is filed ... or if no hearing is requested ... the district director shall rescind" permanent resident status. 8 C.F.R. § 246.2. Moreover, the January 17 letter

does not put the INS on notice that the allegations were contested. A request for the extension of time and the production of documents is a procedural rather than a substantive response. INS thus acted within its statutory and regulatory authority when it rescinded appellant's permanent resident status.

■■■ Under the regulations, "no appeal shall lie" from the district director's decision to rescind where an alien does not respond in the proper manner. *Id.* Furthermore, the statute provides that after rescission, an alien will be treated as if no adjustment to permanent resident status had ever been made. 8 U.S.C. § 1256(a). Therefore, the immigration judge properly refused to review the decision to rescind in the context of exclusion proceedings on the ground that he lacked jurisdiction.

### B. Exclusion Proceedings

■■■ The Act provides that exclusion proceedings before a special inquiry officer, or immigration judge, "shall be the sole and exclusive procedure for determining admissibility of a person to the United States." 8 U.S.C. § 1226(a) (1988). Based on this provision, appellant argues that INS had no authority to bring rescission proceedings against him while he was on parole pending the commencement of exclusion proceedings. In appellant's view, INS should have either paroled him and started exclusion proceedings, admitted him and started rescission proceedings, or admitted him and started deportation proceedings.

The statute and the regulations establish clear procedures for aliens seeking admission to the United States. An alien arriving at the ports of the United States is first examined by an immigration officer. *Id.* § 1225(a) (1988). If the immigration officer suspects that the grounds of an alien's excludability can be easily removed by means enumerated in the regulations, the officer may refer the

alien's case to the district director. 8 C.F.R. § 235.7 (1993). If the immigration officer finds some reason to doubt the alien's admissibility, the alien may be detained for further inquiry by an immigration judge. 8 U.S.C. § 1225(b); 8 C.F.R. § 235.6(a) (1993).[2] This inquiry is to take place in the context of exclusion proceedings, "the sole and exclusive procedure for determining admissibility." 8 U.S.C. § 1226(a).

. The statutory and regulatory provisions on exclusion do not address the availability of rescission proceedings against entering aliens. The question is whether the statute making exclusion proceedings the sole procedure for determining admissibility prevents INS from bringing rescission proceedings against a returning resident alien.

In *Waziri v. INS,* 392 F.2d 55 (9th Cir. 1968), the Ninth Circuit saw no conflict with the statute in a case where rescission rendered an alien immediately subject to deportation, *id.* at 56–57, although the statute in force provided that deportation proceedings "shall be the sole and exclusive procedure for determining the deportability of an alien." 8 U.S.C. § 1252(b) (1964) (current version at 8 U.S.C. § 1252(b) (Supp. IV 1992)). The court found instead that "the essence of [the alien's] substantive challenge is to the underlying rescission order.... The technical correctness of the deportation order is not open to serious challenge." *Waziri,* 392 F.2d at 57.

■■■ Similarly, in the case at bar, the technical correctness of the exclusion order cannot be questioned. Appellant has conceded that he was properly in exclusion proceedings and that he was excludable. The rescission of his permanent resident status provided the grounds for which he could be excluded from admission into the United States. The formal determination of his inadmissibility, however, occurred subsequently in the context of exclusion proceedings.[3]

---

2. Alternatively, INS may parole the alien pending inspection, as was done here. 8 C.F.R. § 235.3(c). An alien may also be paroled into the United States "for emergent reasons or for reasons deemed strictly in the public interest." 8 U.S.C. § 1182(d)(5)(A) (1988); 8 C.F.R. § 212.-5(a), (b) (1993).

3. Although appellant argues that the grounds for excludability must exist at the time the alien attempts to enter the United States, the Board of Immigration Appeals has

> long held that an application for admission to the United States is a continuing application

Therefore, INS did not violate any statutory directive by rescinding appellant's permanent resident status outside the context of exclusion proceedings.[4] On the contrary, INS obeyed the statute's mandate that rescission "shall" occur if ineligibility is discovered "at any time within five years" of the grant of permanent resident status. 8 U.S.C. § 1256(a).

Moreover, nothing in the statutory scheme entitled appellant, by virtue of his status as a permanent resident, to deportation proceedings rather than exclusion proceedings. *See Landon v. Plasencia*, 459 U.S. 21, 28, 103 S.Ct. 321, 326–27, 74 L.Ed.2d 21 (1982). In *Landon*, the Supreme Court discussed at length the substantive and procedural benefits available to aliens who are deported rather than excluded at the border. *Id.* at 25–27. It found, based on the language and legislative history of the statute, that INS could bring exclusion proceedings against a returning resident, rather than admitting the alien and then starting deportation proceedings. *Id.* at 28; *cf. Correa v. Thornburgh*, 901 F.2d 1166, 1171 (2d Cir.1990) (finding that a resident alien who had not yet entered the country was subject to exclusion rather than deportation). Therefore, appellant's argument that INS should have admitted him and then started deportation proceedings fails.

■ Appellant also asserts that INS violated its own regulations when appellant's permanent resident status was rescinded by the district director under 8 C.F.R. § 246.2. His contention is that 8 C.F.R. § 235.7 specifies the only circumstances under which a district director may decide the alien's excludability. Section 235.7 provides that

[i]f the examining immigration officer has reason to believe that the cause of an alien's excludability can readily be removed by the posting of a bond ..., or by the exercise of [discretionary authority conferred by statute], or by granting permission to reapply for admission after deportation or removal, he may in lieu of

detaining the alien for hearing ... refer the alien's case to the district director. 8 C.F.R. § 235.7. The language of § 235.7 is neither mandatory nor exclusive. Section 246.2, on the other hand, requires a district director to rescind the status of a permanent resident alien who neither files an answer nor requests a hearing in response to a notice of intention to rescind. *Id.* § 246.2. INS did not violate its regulations pertaining to exclusion when appellant's permanent resident status was rescinded by the action of a district director.

**C. Due Process**

Lastly, appellant contends that he was denied due process in both the rescission and exclusion proceedings. As a constitutional matter, "in the exercise of its broad power over immigration and naturalization, 'Congress regularly makes rules that would be unacceptable if applied to citizens.'" *Fiallo v. Bell*, 430 U.S. 787, 792, 97 S.Ct. 1473, 1478, 52 L.Ed.2d 50 (1977) (quoting *Mathews v. Diaz*, 426 U.S. 67, 80, 96 S.Ct. 1883, 1891, 48 L.Ed.2d 478 (1976)); *see also Reno v. Flores*, — U.S. —, —, 113 S.Ct. 1439, 1449, 123 L.Ed.2d 1 (1993) (quoting *Fiallo*). Nevertheless, "[i]t is well established that if an alien is a lawful permanent resident of the United States and remains physically present there, ... [h]e may not be deprived of his life, liberty or property without due process of law." *Kwong Hai Chew v. Colding*, 344 U.S. 590, 596, 73 S.Ct. 472, 477, 97 L.Ed. 576 (1953).

■ The Supreme Court has determined that a resident alien in danger of being expelled or excluded has a right to notice of the charge against him and a fair opportunity to be heard. *Rosenberg v. Fleuti*, 374 U.S. 449, 460, 83 S.Ct. 1804, 1811, 10 L.Ed.2d 1000 (1963) (citing *Kwong Hai Chew*); *Kwong Hai Chew*, 344 U.S. at 597–98, 73 S.Ct. at 477–78. In *Kwong Hai Chew*, a Chinese sailor with a permanent residence in the United States was excluded from the country after a five-month absence on the grounds

and admissibility is determined on the basis of the law and the facts existing at the time the application is finally considered. *In re Kazemi*, 19 I. & N. Dec. 49, 51 (BIA 1984).

**4.** *Cf. In re Huang*, 19 I. & N. Dec. 749, 755 (BIA 1988) (upholding a finding in exclusion proceedings that certain entering aliens had abandoned their permanent resident status).

that his entry was "prejudicial to the public interest." 344 U.S. at 594–95, 73 S.Ct. at 476. The government denied the alien both notice of the specific accusations against him and any opportunity for a hearing. *Id.* at 595, 73 S.Ct. at 476–77. The Supreme Court concluded that the alien's rights were the same as if he had remained continuously within the country, and thus the alien was entitled to notice and a hearing. *Id.* at 596–97, 600, 73 S.Ct. at 477–78, 479; *see also Landon,* 459 U.S. at 33, 103 S.Ct. at 329–30.

The facts of *Kwong Hai Chew* are clearly distinguishable from the present case. Unlike the alien in *Kwong Hai Chew,* appellant received notice of INS' intent to rescind his permanent resident status and an opportunity to be heard upon request or the filing of a substantive answer. He waived that opportunity. Clearly, "[t]he availability of recourse to a constitutionally sufficient administrative procedure satisfies due process requirements if the complainant merely declines or fails to take advantage of the administrative procedure." *Dusanek v. Hannon,* 677 F.2d 538, 542–43 (7th Cir.), *cert. denied,* 459 U.S. 1017, 103 S.Ct. 379, 74 L.Ed.2d 512 (1982). No due process violation is inherent in the administrative procedures for automatic rescission when the alien fails to respond in a proper and timely manner.

Appellant nevertheless insists that his right to due process includes a right to defend against the rescission charges in a proceeding where the burden is on the government to prove its case by clear and convincing evidence. Where the rescission of permanent resident status will lead directly to deportation, the burden at the rescission hearings is on the government to prove its case by clear and convincing evidence. *Waziri,* 392 F.2d at 57. Moreover, INS bears the burden of proof in exclusion proceedings where the alien has permanent resident status. *Landon,* 459 U.S. at 35, 103 S.Ct. at 330–31; *see also In re Huang,* 19 I. & N. Dec. 749, 754 (BIA 1988) ("where an applicant for admission has a colorable claim to returning resident status, the burden is on [INS] to show that the applicant should be deprived of his or her status as a lawful permanent resident").

If appellant had availed himself of the opportunity for a rescission hearing, the government would have been required to prove its case by clear and convincing evidence. In contrast, appellant failed to respond appropriately to the notice of intention to rescind and later conceded not only that he was properly in exclusion proceedings but also that he was excludable. As this court has stated, the rule that clear and unequivocal proof is required to bring about a loss of citizenship does not pertain to default judgments. *United States v. Borchers,* 163 F.2d 347, 349 (2d Cir.), *cert. denied,* 332 U.S. 811, 68 S.Ct. 108, 92 L.Ed. 389 (1947). Appellant's due process claims, like his other arguments, do not persuade the court that his petitions for writ of habeas corpus were improperly denied.

## CONCLUSION

INS acted in concordance with the statutory and regulatory scheme when it began proceedings to rescind appellant's permanent resident status after temporarily permitting him into the country on parole pending inspection. The statute allows INS to bring rescission proceedings at any time within five years of a grant of permanent resident status, and that limit was not exceeded here. Moreover, appellant neither filed an answer nor requested a hearing in the rescission proceedings, and subsequently conceded that he was properly in exclusion proceedings and that he was excludable. Appellant cannot claim that his rights were violated when his own choices resulted in the situation in which he finds himself. For the reasons stated, the district court's denial of appellant's petitions for writ of habeas corpus is affirmed.