Mendez v. Barr

# In the
# United States Court of Appeals
## For the Second Circuit

August Term 2018

No. 18-801

TOMAS MENDEZ,

*Petitioner,*

v.

WILLIAM P. BARR, UNITED STATES ATTORNEY GENERAL,

*Respondent.*

Appeal from the Board of Immigration Appeals
No. A056-560-110, Pauley, Board Member, Presiding.
(Argued February 14, 2019; Decided May 27, 2020)

Before:     PARKER, CHIN, and SULLIVAN, *Circuit Judges.*

Tomas Mendez, a lawful permanent resident, was denied reentry to the country upon his return from a trip abroad. The Department of Homeland Security charged him as inadmissible for having been previously convicted of misprision of a felony in violation of 18 U.S.C. § 4. An immigration judge found Mendez removable as charged, and the BIA affirmed, reasoning that misprision is categorically a crime of moral turpitude. Mendez petitioned for review, arguing that § 4 did not require, as an element, the requisite intent for a crime of moral turpitude. We **GRANT** the petition and **VACATE** the decision of the BIA.

Judge Sullivan dissents in a separate opinion.

GERARD J. CEDRONE, Goodwin Procter LLP, Boston, MA (William M. Jay, Goodwin Procter LLP, Washington, DC, *on the brief*), *for Petitioner*.

LINDSAY B. GLAUNER (Joseph H. Hunt & Linda S. Wernery, *on the brief*), *for* William P. Barr, U.S. Attorney General, Washington, DC, *for Respondent*.

————

BARRINGTON D. PARKER, *Circuit Judge*:

Tomas Mendez was admitted to the United States in 2004 as a lawful permanent resident. In 2010, he was convicted of misprision of a felony in violation of 18 U.S.C. § 4. That section makes it a crime for one with knowledge of the commission of a federal felony to conceal it and not promptly report it to the appropriate authorities. 18 U.S.C § 4.

In 2016, upon returning from a trip abroad, the Department of Homeland Security charged him, based on his misprision conviction, as inadmissible under § 212(a)(2)(A)(i)(I) of the Immigration and Nationality Act, because he was a noncitizen convicted of a crime involving moral turpitude ("CIMT"). The immigration judge sustained the charge, and the Board of Immigration Appeals

("BIA") affirmed. The BIA concluded that the violation of § 4 meant that he had committed a CIMT. *Matter of Mendez*, 27 I. & N. Dec. 219, 225 (BIA 2018).

The BIA defines a CIMT as crime that is "inherently base, vile, or depraved, and contrary to the accepted rules of morality and duties owed between persons or to society in general." *Rodriguez v. Gonzales*, 451 F.3d 60, 63 (2d Cir. 2006).[1] For decades, the BIA never considered misprision a CIMT. *Matter of Sloan*, 12 I. & N. Dec. 840, 842 (BIA 1966) (holding misprision does not constitute a CIMT).

However, in 2002, the Eleventh Circuit held in *Itani v. Ashcroft* that a conviction under § 4 is categorically a CIMT "because it necessarily involves an affirmative act of concealment or participation in a felony, behavior that runs contrary to accepted societal duties and involves dishonest or fraudulent

---

[1] Unless otherwise indicated, in quoting cases all internal quotation marks, alterations, emphases, footnotes, and citations are omitted.

activity." 298 F.3d 1213, 1216 (11th Cir. 2002).[2] Following the Eleventh Circuit's lead, the BIA did an about face and determined in a case arising in the Ninth Circuit that misprision was a CIMT. *In re Robles-Urrea*, 24 I. & N. Dec. 22, 25 (BIA 2006).

The Ninth Circuit rejected the BIA's conclusion. The court held that because § 4 required only knowledge of the felony and did not require an intent to defraud, or conceal, or to obstruct justice, the statute encompassed conduct that was not inherently base or vile. *Robles-Urrea v. Holder*, 678 F.3d 702, 710-12 (9th Cir. 2012). The Ninth Circuit reasoned that "[n]othing in the statute prohibiting misprision of a felony references the specific purpose for which the concealment must be undertaken," let alone a purpose sufficient to qualify misprision as a categorical CIMT. *Id.* at 710.

---

[2] In 2017, the Fifth Circuit joined the Eleventh Circuit to hold that misprision is categorically a CIMT. *Villegas-Sarabia v. Sessions*, 874 F.3d 871, 878 (5th Cir. 2017). We respectfully decline to follow the Fifth and Eleventh Circuit's approach. We believe that neither *Itani* nor *Villegas-Sarabia* satisfactorily supports the assertion that specific intent, or intent to defraud, can be read into § 4, especially when Congress did not include such a requirement and has shown elsewhere in the criminal code that it knows how to include such a requirement if it so chooses. The Eleventh Circuit in *Itani* reasoned only "that misprision of a felony is a crime of moral turpitude because it necessarily involves an affirmative act of concealment or participation in a felony, behavior that runs contrary to accepted societal duties and involves dishonest or fraudulent activity." 298 F.3d at 1216. We are reluctant to adopt this reasoning because, "any crime, by definition, runs contrary to some duty owed to society" and "[i]f this were the sole benchmark for a crime involving moral turpitude, every crime would involve moral turpitude." *Robles-Urrea v. Holder*, 678 F.3d 702, 709 (9th Cir. 2012). We are also unpersuaded by *Villegas-Sarabia*, where the Fifth Circuit relied almost exclusively on *Itani*'s reasoning.

4

Mendez moved to terminate removal proceedings and for cancellation of removal, arguing that misprision is not a CIMT. Relying on the BIA's decision in *Robles-Urrea*, the IJ found Mendez removable as charged. The IJ also pretermitted Mendez's application for cancellation of removal, concluding that because his 2010 misprision conviction constituted a CIMT, it stopped the clock for calculating length of residency and prevented him from establishing the required seven years of continuous residency. In February 2018, the BIA issued a precedential decision in this case. *Matter of Mendez*, 27 I. & N. Dec. at 219. It reaffirmed its holding that misprision is a CIMT and declined to follow the Ninth Circuit's rejection of its reasoning in *Robles-Urrea.*

Mendez petitions for review. We have jurisdiction under 8 U.S.C. § 1252 (a)(2)(D). Mendez argues that a conviction for misprision is not a CIMT because it does not categorically involve conduct that is inherently base, vile, or depraved. He also argues that, contrary to the BIA's contention, its decision is not entitled to *Chevron* deference. We agree on both points.

## DISCUSSION

The dispositive issue is whether misprision is a CIMT. Because the BIA has no particular expertise in construing federal criminal statutes (as opposed to the INA), we owe no deference to its construction of § 4. *United States v. Apel*, 571

5

U.S. 359, 369 (2014); *Mendez v. Mukasey* 547 F.3d 345, 346 (2d Cir. 2008). Accordingly, we review *de novo* the BIA's conclusion that Mendez's conviction under § 4 is a conviction for a CIMT. *Rodriguez*, 451 F.3d at 63.

**I**

In *Rodriguez*, we held that to be a CIMT a statute must encompass "conduct that shocks the public conscience as being inherently base, vile, or depraved, and contrary to the accepted rules of morality and the duties owed between persons or to society in general." *Id*. In other words, the act must be "*per se* morally reprehensible and intrinsically wrong or *malum in se*, so it is the nature of the act itself and not the statutory prohibition of it which renders a crime one of moral turpitude." *Id.*

To determine whether a conviction is for a CIMT, the BIA and the courts employ a "'categorical approach,' focusing on the intrinsic nature of the offense." *Gill v. I.N.S*, 420 F.3d 82, 89 (2d Cir. 2005). Under this approach, "we look only to the minimum criminal conduct necessary to satisfy the essential elements of the crime." *Mukasey*, 547 F.3d at 348. To qualify, the crime "must by definition, and in all instances, contain each of those elements that constitute a CIMT." *Gill*, 420 F.3d at 89.

The federal misprision statute provides:

6

Whoever, having knowledge of the actual commission of a felony cognizable by a court of the United States, conceals and does not as soon as possible make known the same to some judge or other person in civil or military authority under the United States, shall be fined under this title or imprisoned not more than three years, or both.

18 U.S.C. § 4. To convict under § 4, the Government must prove that (1) the principal committed and completed the alleged felony, (2) the defendant had full knowledge of that fact, (3) the defendant failed to notify the authorities, and (4) the defendant took steps to conceal the crime. *United States v. Cefalu*, 85 F.3d 964, 969 (2d Cir. 1996).

The categorical approach has not been satisfied in this case. The courts, as well as the BIA itself, have repeatedly made clear that the indispensable component of a CIMT is "evil intent," which means a specific mental purpose that is "inherently base, vile, or depraved." *Mukasey*, 547 F.3d at 347.

Nothing in § 4—either expressly or by reasonable inference—speaks to intent. The absence of an intent requirement from § 4 contrasts sharply with perjury and obstruction of justice—which contain intent requirements and which are CIMTs. A person commits perjury when, "having taken an oath before a competent tribunal, officer, or person, . . . that he will testify, declare, depose, or certify truly, . . . *willfully* and contrary to such oath states or subscribes any

7

material matter which he does not believe to be true." 18 U.S.C. § 1621(1) (emphasis added). A person commits obstruction of justice, whenever he "*willfully* endeavors by means of bribery to obstruct, delay, or prevent the communication of information relating to a violation of any criminal statute of the United States by any person to a criminal investigator." 18 U.S.C. § 1510(a) (emphasis added). § 4, by contrast, does not speak to any specific mental purpose.

The BIA's own decisions, which it has inexplicitly disavowed, prove this point. In *Matter of Sloan*, the BIA held that the "intent with which misprision is committed" is not "a factor" under § 4. 12 I. & N. Dec. at 842. In *Matter of Espinoza-Gonzales*, the BIA held that misprision "lacks the critical element of an affirmative and intentional attempt, motivated by a specific intent, to interfere with the process of justice." 22 I & N Dec. 892, 896 (BIA 1999). Indeed, in this case, the BIA acknowledged that § 4 "does not explicitly require that the act of concealment be intentional." *Matter of Mendez*, 27 I. & N. Dec. at 223. These concessions by the BIA are telling:  they mean that the BIA itself is of the view that a defendant can be convicted under § 4 even if the defendant had no evil intent. Following the BIA's lead, we conclude that convictions for violating § 4

8

are not entitled to categorical treatment because they can occur in the absence of conduct that is "inherently base, vile, or depraved."

Consider an individual living in a housing project that is plagued by violent drug-dealing gangs and drug-related crimes. That individual witnesses a shooting involving the gangs and knows the individuals involved who happen to be his neighbors in the projects. When that individual is approached by law enforcement officers, he falsely denies knowledge of those involved in the shooting. He does so because he fears that the shooters or other gang members will retaliate against him and his family. No one can seriously argue that this individual did not violate § 4 and no one can seriously argue that what he did was "inherently base, vile, or depraved."

As the case law demonstrates, there exists a realistic probability, not just a theoretical one, that this conduct could be prosecuted under § 4. *See, e.g.*, *United States v. Davis*, 491 F. App'x 143, 145 (11th Cir. 2012) (noting defendant's guilty plea to misprision of felony for "failing to disclose knowledge of illegal drug activity to authorities"); *United States v. Barker*, 78 F. App'x 767, 769 (2d Cir. 2003) (noting defendant's guilty plea "to concealing drug transactions"); *United States v. Blount*, 940 F. Supp. 720, 732 (E.D. Pa. 1996), *aff'd sub nom. United States v. Riddick*, 100 F.3d 949 (3d Cir. 1996) ("Even citizens without law enforcement

9

duties are guilty of a misprision of a felony when they witness a drug transaction and fail to report it.").

Take as another example, a parent who has reason to believe their son or daughter is using drugs and distributing them to friends. The parent discovers the drugs in the teenager's room and flushes them down the toilet. It is clear that the parent violated § 4. But no one could seriously contend that the parents conduct was corrupt or vile or transgressed accepted rules of morality. These examples are not fringe possibilities or constructions of legal imagination—they are common occurrences. *United States v. Hill*, 890 F.3d 51, 57 n.9 (2d Cir. 2018).

The BIA's decision that misprision categorically constitutes a CIMT is also unmoored from its own precedent. The BIA and courts have consistently declared offenses that involve appreciably higher levels of moral culpability to be insufficiently grave to qualify as CIMTs. *See, e.g., Soto-Rodriguez v. Holder*, 607 F. App'x 648 (9th Cir. 2015) (witness tampering); *Tejwani v. Attorney General of the United States*, 349 F. App'x 719 (3d Cir. 2009) (money laundering); *Partyka v. Attorney General of the United States*, 417 F.3d 408 (3d Cir. 2005) (aggravated assault on a police officer); *In re Sejas*, 24 I. & N. Dec. 236, 239 (BIA 2007) (assault against a family member); *Robles-Urrea*, 678 F.3d at 708 (noting that assault with a deadly weapon has been found not to involve moral turpitude).

10

Moreover, the BIA's decision that misprision categorically involves depraved conduct leads to unsound results under its own precedent because it treats misprision more severely than the more serious offense of accessory after the fact. In *Matter of Rivens*, the BIA concluded that assisting an individual to escape in violation of 18 U.S.C. § 3 is not always a crime involving moral turpitude. 25 I. & N. Dec. 623, 627 (BIA 2011). According to the BIA, "it makes sense to find that an accessory conviction is only one for a crime involving moral turpitude when the aid is knowingly provided to help the principal escape prosecution or punishment for a base or vile crime." *Id.* at 628. Therefore, the BIA held that one "must look to the underlying or substantive crime to determine whether [being an accessory under § 3] involved moral turpitude." *Id.* at 627. The BIA has failed to satisfactorily explain the puzzling disparity its decision creates between the treatment of accessory and misprision offenses.

**II**

The Government draws on *Jordan v. De George*, 341 U.S. 223 (1951). There the Court stated "that a crime in which fraud is an ingredient involves moral turpitude." *Id.* at 227. From this authority, the Government argues that the necessary intent to defraud can be implied from the requirement in § 4 that the

11

defendant take steps to conceal the crime. We believe it is unsound to "imply" the existence of an intent requirement into a criminal statute such as § 4 that Congress chose not to include. If this approach were correct, it would be impossible in most instances to ever determine whether a crime was a CIMT. The short—and conclusive—response is that nothing in the statute speaks to the specific purpose for which the concealment must be undertaken. The statute does not mention "intent" or "defraud." The BIA concedes all of this.

Unable to show that § 4 has an intent requirement, the Dissent nonetheless concludes that misprision qualifies as a CIMT because it involves "dishonest and deceitful behavior." Dissent at 13. However, almost all crimes involve—by their very nature—some dishonest and deceitful behavior, which explains why our past cases, as explained below (pages 16-17), require more to hold that a crime categorically constitutes a CIMT. *See, e.g., Rodriguez*, 451 F.3d at 64; *Mendez*, 547 F.3d at 347; *Ahmed v. Holder*, 324 F. App'x 82, 84 (2d Cir. 2009). If we were to accept the Dissent's construction, it would eviscerate the distinction in the law between generic criminal conduct and crimes involving moral turpitude, thus turning almost all crimes into CIMTs. The Ninth Circuit reached the same conclusion in *Robles-Urrea*. There it rejected an argument by the government (and picked up on by the Dissent) that "misprision of a felony is base, vile, and

depraved because it has been historically condemned." *Robles-Urrea*, 678 F.3d at 710. Cited as support for this proposition is the Supreme Court's decision in *Roberts v. United States*, 445 U.S. 552 (1980). *Id*. The Ninth Circuit explained that "[t]here is no question that 'gross indifference to the duty to report known criminal behavior remains a badge of irresponsible citizenship.'" *Id*. (citing *Roberts*, 445 U.S. at 558). However, "[t]hat only explains . . . why we choose to criminalize misprision of a felony in the first place. It says nothing about whether misprision of a felony is worse than any *other* crime." *Id*.

Moreover, when "Congress uses certain language in one part of the statute and different language in another, the court assumes different meanings were intended." *Cruz-Miguel v. Holder*, 650 F.3d 189, 199 (2d Cir. 2011) (quoting *Sosa v. Alvarez-Machain*, 542 U.S. 692, 711 n.9 (2004)); *see also Nwozuzu v. Holder*, 726 F.3d 323, 327 (2d Cir. 2013). Congress has explicitly required an intent to defraud in other parts of the federal criminal code but did not do so for misprision.[3]

---

[3] *Compare* 18 U.S.C. § 4 (misprision statute) (subjecting to criminal penalties anyone with "knowledge . . . of a felony" and who "conceals" that felony from authorities) *with* 18 U.S.C. § 152(1) (subjecting to criminal penalties any "person who . . . knowingly and fraudulently conceals from a custodian . . . property belonging to the estate of a debtor"); 18 U.S.C. § 152(2) (subjecting to criminal penalties any person who "knowingly and fraudulently makes a false oath or account in or in relation to any case under title 11"); and 18 U.S.C. § 1002 (subjecting to criminal penalties, any person who "knowingly and with intent to defraud the United States, or any agency thereof, possesses any false, altered, forged, or counterfeited writing or document for the purpose of enabling another to obtain from the United States, or from any agency, officer or agent thereof, any sum of money").

We, of course, readily concede that some individuals who violate § 4 intend to defraud and some act with vile or bases motives. That is beside the point. As we have seen, the statute can be violated in ways that do not involve such motives because the statute criminalizes conduct that is not in all instances fraudulent or base or vile.

Moreover, the Government's argument that an "implicit" *mens rea* requirement can be read into the statute proves too much. It is a concession that the statute is ambiguous. That ambiguity means that the Government's approach fails under the rule of lenity: "When a reasonable doubt persists about a statute's intended scope even *after* resort to the language and structure, legislative history, and motivating policies of the statute, we resolve doubts in favor of the defendant rather than imputing to Congress an undeclared will to criminalize conduct." *United States v. Valle*, 807 F.3d 508, 523 (2d Cir. 2015). "The rule of lenity ensures that criminal statutes will provide fair warning of what constitutes criminal conduct, minimizes the risk of selective or arbitrary enforcement, and strikes the appropriate balance between the legislature and the court in defining criminal liability." *Id.*; *see also Ali v. Reno*, 22 F.3d 442, 446 (2d Cir. 1994) ("Lingering ambiguities in a statute concerning the forfeiture of residence in this country should be resolved in favor of the alien."). Indeed, the

14

BIA itself has recognized that where there are ambiguities as to whether an offense involves a CIMT, "any doubts in deciding such questions must be resolved in the alien's favor." *Matter of Serna*, 20 I. & N. Dec. 579, 586 (BIA 1992).

With these considerations in mind, the Government's position in this case becomes even more tenuous. It suggests, without pointing to any persuasive evidence in the language, structure, legislative history, or motivating policies of § 4, that individuals who fail to inform law enforcement officers of a felony for reasons such as the ones we have mentioned have nonetheless committed a crime that is inherently vile and immoral. That is not a reasonable reading of § 4 and it is highly unlikely—indeed inconceivable—that is what Congress intended.

To be sure, establishing a CIMT rooted in fraud does not require the Government to prove every element of common law fraud. *Mukasey*, 547 F.3d at 347. However, mere intent to conceal (or an equivalent *mens rea*) is not, on its own, sufficient because an individual may have a variety of non-culpable motivations for withholding information about a felony. To account for these circumstances, we have afforded different treatment to statutes that contained a *mens rea* element (which was indicative of a CIMT) and those that did not contain such an element. For example, we have generally held, that deceit must be paired with an intent to wrongfully extract some benefit or to cause a detriment for the

15

offense to constitute a CIMT. *See, e.g.*, *Ahmed*, 324 F. App'x at 84; *Rodriguez*, 451 F.3d at 64.

In *Rodriguez v. Gonzalez*, we held that making a false statement in the application and use of a passport in violation of 18 U.S.C. § 1542 was a CIMT. We reasoned that "[a]lthough section 1542 may not contain every element of common law fraud, it certainly involves deceit *and an intent to impair the efficiency and lawful functioning of the government*." 451 F.3d at 64 (emphasis added). In *Mendez v. Mukasey*, we discussed a BIA case, *Matter of Di Filippo*, which held that making false statements is not a CIMT. We noted that the outcome of the case turned on the lack of an intent element because "the statute did not require 'proof that the false statement was made *for the purpose of obtaining benefits*.'" *Mukasey*, 547 F.3d at 347 (emphasis added). Most recently, in *Ahmed v. Holder*, then-Judge Sotomayor wrote that falsely representing a social security number with an intent to deceive in violation of 18 U.S.C. § 408(a)(7)(B) was not a CIMT. Pulling from the principles in *Rodriguez*, she reasoned that "[t]he intent to deceive is not equivalent to the intent to defraud, which generally requires an intent to obtain some benefit or cause a detriment." 324 F. App'x at 84. Only the latter is sufficient to categorize a crime as a CIMT. *Id.*

16

The BIA has similarly held, on multiple occasions, that something more than mere deceit or an intent to conceal is necessary. In *Matter of Serna*, the BIA held that the possession of forged immigration documents in violation of 18 U.S.C. § 1546 is not a CIMT because although the statute "requires knowledge that the immigration document was altered, such knowledge is not necessarily equated *with the intention to use the document to defraud the United States Government*." 20 I. & N. Dec. at 585 (emphasis added). And in *Matter of Balao*, the BIA determined that knowingly passing bad checks in violation of 18 Pa. Cons. Stat. § 4105(a)(1) is not a CIMT because the statute at issue "speaks only of the 'knowing' issuance of bad checks" but "does not expressly require intent to defraud as an element of the crime." 20 I. & N. Dec. 440, 443 (BIA 1992), *overruled by statute on other grounds as recognized in Poveda v. U.S. Attorney Gen.*, 692 F.3d 1168, 1177 (11th Cir. 2012).

**III**

The Government argues that we should afford *Chevron* deference to the BIA's conclusion that § 4 constitutes a CIMT. We disagree. While we give *Chevron* deference "to the BIA's published, precedential interpretations of the Immigration and Nationality Act," we owe no deference to its interpretation of a

criminal statute. *Baraket v. Holder*, 632 F.3d 56, 58 (2d Cir. 2011); *Mukasey*, 547 F.3d at 346. Here, the BIA's decision rests on its incorrect interpretation of § 4 (whether it contains a specific type of scienter), not of the INA. Accordingly, we owe no *Chevron* deference to the BIA's decision.

## IV

For the foregoing reasons, we hold that misprision is not categorically a CIMT. In so holding, we align ourselves with the Ninth Circuit. *See Robles-Urrea*, 678 F.3d at 710-11. The Government has failed to show that misprision rises to the level of base, vile, conscience-shocking conduct traditionally attributed to the gravest and most inherently evil offenses. Moreover, nothing in the misprision statute suggests that the crime has, as an element, the fraudulent intent necessary for misprision to constitute a CIMT. *See, e.g.*, *Ahmed*, 324 F. App'x at 84; *Rodriguez*, 451 F.3d at 64.

## CONCLUSION

For the reasons set forth, we **GRANT** the petition and **VACATE** the decision of the BIA.

RICHARD J. SULLIVAN, *Circuit Judge*, dissenting:

Tomas Mendez was convicted of misprision of a felony in violation of 18 U.S.C. § 4, a crime that the Board of Immigration Appeals ("BIA" or the "Board"), the Fifth Circuit, and the Eleventh Circuit all agree categorically constitutes a crime involving moral turpitude ("CIMT"). Rejecting that conclusion, the majority today joins the Ninth Circuit in holding that a conviction for misprision of a felony is not categorically a CIMT. Because I believe the BIA's definition of CIMT to be reasonable, and because § 4 categorically meets that definition, I agree with the BIA's conclusion that Mendez was convicted of a CIMT and would deny Mendez's petition for review.

## I.

"We afford *Chevron* deference to the BIA's construction of undefined statutory terms such as 'moral turpitude' because of the BIA's expertise applying and construing the immigration laws." *Rodriguez v. Gonzales*, 451 F.3d 60, 63 (2d Cir. 2006). As the BIA recently explained in *Matter of Mendez*, 27 I. & N. Dec. 219, 221 (B.I.A. 2018), a crime involving moral turpitude has two essential elements: (1) "a culpable mental state" and (2) "reprehensible conduct." With respect to the former, BIA precedent has long made clear that moral turpitude inheres in

intentional conduct. *See, e.g., Matter of Ortega-Lopez*, 27 I. & N. Dec. 382, 387 (B.I.A. 2018) (holding that because a statute "indisputably involve[d] intentional conduct," it met the culpable mental state requirement to qualify as a CIMT); *Matter of Ruiz-Lopez*, 25 I. & N. Dec. 551, 553 (B.I.A. 2011) ("Where knowing or intentional conduct is an element of a morally reprehensible offense, we have found moral turpitude to be present.") As for the latter, the BIA has declared that conduct is reprehensible if it is "inherently base, vile, or depraved, and contrary to the accepted rules of morality and the duties owed between persons or to society in general." *Matter of Silva-Trevino*, 26 I. & N. Dec. 826, 833 (B.I.A. 2016) (citation omitted).

As we noted in *Rodriguez*, crimes "'impairing or obstructing an important function of a department of the government . . . by deceit . . . or dishonest means' involve moral turpitude." 451 F.3d at 63 (brackets omitted) (quoting *Matter of Flores*, 17 I. & N. Dec. 225, 229 (B.I.A. 1980)). Put differently, "an intent to deceive, coupled with some impairment of government functioning, whether intended or not, satisfies the mental culpability requirement for a CIMT." *Parris v. Whitaker*, 758 F. App'x 135, 138 (2d Cir. 2018). Indeed, the BIA and courts across the country have recognized that "concealment offenses are crimes involving moral

2

turpitude." *Matter of Mendez*, 27 I. & N. Dec. at 221; *see also Matter of Sloan*, 12 I. & N. Dec. 840, 854 (A.G. 1968) (concluding that "the active and knowing interference with the enforcement of the laws of the United States . . . involves moral turpitude"); *Villegas-Sarabia v. Sessions*, 874 F.3d 871, 881 (5th Cir. 2017) (affirming BIA interpretation that an affirmative step to conceal "necessarily entails deceit" (citation omitted)); *Itani v. Ashcroft*, 298 F.3d 1213, 1216 (11th Cir. 2002) (finding that affirmative act of concealment involves "dishonest or fraudulent activity" and is a CIMT); *Jordan v. De George*, 341 U.S. 223, 232 (1951) (noting "crimes in which fraud was an ingredient have always been regarded as involving moral turpitude").

Because, under *Chevron*, we must defer to the BIA's interpretation of what constitutes a CIMT so long as it is reasonable, and because this Court has repeatedly recognized the reasonableness of the BIA's definition in this regard, *see Rodriguez*, 451 F.3d at 63 ("We find this interpretation [to be] reasonable . . . ."); *Michel v. INS*, 206 F.3d 253, 262–63 (2d Cir. 2000), we are compelled to apply the BIA's definition of a CIMT to § 4.

3

II.

Of course, the fact that we must defer to the BIA's reasonable interpretation of a CIMT does not end the inquiry. As we have noted previously, "the BIA has no expertise in construing . . . criminal statutes, and so we review *de novo* the BIA's finding that a petitioner's crime of conviction contains those elements which have been properly found to constitute a CIMT." *Gill v. INS*, 420 F.3d 82, 89 (2d Cir. 2005) (emphases omitted).

To determine whether a conviction constitutes a CIMT, this Court applies a categorical analysis. *Acevedo v. Barr*, 943 F.3d 619, 622 (2d Cir. 2019). Under this approach, the Court examines whether "'the minimum conduct criminalized by the statute' would support classification of a crime as a CIMT." *Efstathiadis v. Holder*, 752 F.3d 591, 595 (2d Cir. 2014) (quoting *Moncrieffe v. Holder*, 569 U.S. 184, 191 (2013)). If the crime "by definition, and in all instances, contain[s] each of those elements that constitute a CIMT," then the crime is categorically a CIMT. *Gill*, 420 F.3d at 89. Having reviewed the language and structure of § 4, I agree with the BIA's conclusion that misprision of a felony categorically satisfies the elements of a CIMT – that is, it necessarily involves intentional conduct that is reprehensible.

4

As to the element of intent, misprision of a felony under 18 U.S.C. § 4 prohibits a person who has "knowledge of the actual commission of a felony cognizable by a court of the United States" from "conceal[ing] and . . . not as soon as possible mak[ing] known the same to some judge or other person in civil or military authority under the United States." To convict under § 4, the government must prove that (1) "the principal committed and completed the alleged felony;" (2) the "defendant had full knowledge of that fact;" (3) the "defendant failed to notify the authorities;" and (4) the "defendant took steps to conceal the crime." *United States v. Cefalu*, 85 F.3d 964, 969 (2d Cir. 1996). The second element requires knowledge of the crime and the fourth element has been interpreted to require "some affirmative act of concealment." *Branzburg v. Hayes*, 408 U.S. 665, 696 n.36 (1972); *see also* 1 Leonard B. Sand *et al.*, *Modern Federal Jury Instructions: Criminal*, Instruction 12-7 (2019) (requiring that "defendant deliberately took some affirmative step to conceal the crime"). Although the majority is technically correct that § 4 does not *explicitly* require that the affirmative act of concealment be intentional, Maj. Op. at 7–8, it is difficult to imagine that a person could be prosecuted under § 4 for an *unintentional* concealment of a felony, and the majority cites no case involving such an accidental crime. Importantly, the BIA has

5

recognized that "it is not necessary that the statute prohibiting [the relevant conduct] include the usual phraseology concerning fraud" so long as the statute involves "an affirmative act calculated to deceive the government." *Matter of Flores*, 17 I. & N. Dec. at 228–29.

As the Fifth Circuit unanimously held in *Patel v. Mukasey*, 526 F.3d 800 (5th Cir. 2008), and unanimously reaffirmed in *Villegas-Sarabia*, § 4's element of an affirmative act to conceal "necessarily entails the act of *intentionally* giving a false impression, *i.e.*, the false impression that the earlier felony never occurred." *Id.* at 803 (emphasis added); *Villegas-Sarabia*, 874 F.3d at 878–79. The Eleventh Circuit in *Itani v. Ashcroft* likewise concluded that an affirmative act of concealment necessarily involves "dishonest or fraudulent activity." 298 F.3d at 1216 (affirming the BIA's determination that "misprision of a felony is a crime of moral turpitude because it requires the affirmative, *intentional* concealment of a known felony" (emphasis added)). In considering the precursor to § 4, the Tenth Circuit similarly described an affirmative act of concealment as encompassing a "positive act designed to conceal from the authorities the fact that a crime had been committed." *Bratton v. United States*, 73 F.2d 795, 797 (10th Cir. 1934); *see also United States v. Davila*, 698 F.2d 715, 717 (5th Cir. 1983) ("Violation of the misprision statute

6

additionally requires some positive act *designed* to conceal from authorities the fact that a felony has been committed." (emphasis added)); *United States v. King*, 402 F.2d 694, 697 (9th Cir. 1968) (requiring an affirmative act "*designed* to conceal the crime" (emphasis added)). The plain meaning of "design" includes intent. *See Design*, *Black's Law Dictionary* (10th ed. 2014) ("Purpose or intention combined with a plan").

A recent decision from a district court in this Circuit nicely illustrates the centrality of intent in any misprision of felony charge. In *United States v. Potik*, No. 17-cr-232 (AKH), 2017 WL 4315011, at *1 (S.D.N.Y. Sept. 26, 2017), the defendant was charged with committing misprision of a felony by "having knowledge of the actual commission of a felony . . . [and] knowingly . . . conceal[ing] the same." The defendant pleaded guilty to this offense, and Judge Hellerstein considered whether there was a factual basis for the plea, specifically, for the fourth element of misprision of a felony, which he described as "intentional concealment." *Id.* at *3. Judge Hellerstein ultimately refused to accept the defendant's guilty plea because he concluded that the defendant's intent for the affirmative act of concealment – deleting certain text messages – "had nothing to do with his desire to destroy evidence" of the felony. *Id.* at *5. The Ninth Circuit reached a similar

7

conclusion in *King*, where it reversed a conviction for misprision of a felony because the government failed to establish that the defendant's purpose was "to conceal the crime." 402 F.2d at 696–97.

The majority attempts to sidestep this authority by relying on two prior decisions of the BIA for the proposition that the "intent with which misprision is committed . . . is [not] a factor" under § 4. *Matter of Sloan*, 12 I. & N. Dec. at 842. But as noted above, the BIA's interpretation of criminal statutes is entitled to no deference whatsoever. *See Gill*, 420 F.3d at 89. Moreover, the BIA in *Matter of Sloan* mischaracterized the crime of misprision as merely the "failure to furnish information as to the" felony, 12 I. & N. Dec. at 842, without acknowledging that § 4 actually requires an affirmative step to conceal that crime. Nor did *Matter of Sloan* discuss the caselaw interpreting that element to require that the step be designed or *intended* to conceal the underlying felony. This no doubt explains why the Fifth and Eleventh Circuits rejected the reasoning of *Matter of Sloan* in *Patel*, *Villegas-Sarabia*, and *Itani*, and why the BIA itself ultimately reversed course on this issue in *Matter of Mendez*.

The majority also turns to a grab bag of district court cases from around the country purportedly demonstrating that "there exists a realistic, not just a

8

theoretical probability, that" an individual could take an affirmative step to conceal a felony *without intent* and still "be prosecuted under § 4." Maj. Op. at 9. But it is difficult to see how any of the cases actually stands for that proposition. For example, a review of the misprision of a felony count in *United States v. Davis*, No. 11-cr-35 (M.D. Ga. Jan. 11, 2012), ECF No. 68 (emphasis added), reveals that Davis was charged with "*conceal[ing]* and fail[ing] to disclose [his] knowledge" of drug activity that violated 21 U.S.C. § 841(a)(1). Similarly, this Court in *United States v. Barker*, 78 F. App'x 767, 769 (2d Cir. 2003) (emphasis added), confronted a situation in which the defendant pleaded guilty to "*concealing* drug transactions." Neither case speaks explicitly to intent, but since the BIA has made clear that "concealment offenses are crimes involving moral turpitude," *Matter of Mendez*, 27 I. & N. Dec. at 221, it is hard to tell how the majority's position is bolstered by these cases. As for *United States v. Blount*, the defendants in that case "were not [even] charged with misprision of a felony" – they pleaded guilty to narcotics conspiracy – and the district court's musing that someone could be guilty of misprision by failing to report a drug transaction was in no way necessary to the outcome of that case. 940 F. Supp. 720, 730, 732. (E.D. Pa. 1996). Furthermore, even if the question of whether defendants' conduct qualified as misprision of a felony had been before

9

the district court, the defendants in that case were accused of taking affirmative steps designed to conceal the felony drug transactions being committed, such as by helping the principals bypass prison security measures, thereby signifying their culpable mental state (*i.e.*, intent). *Id.*

Because I find the reasoning of the Fifth and Eleventh Circuits to be persuasive on this point, I agree with the BIA that misprision of a felony under § 4 requires an intentional step to conceal the felony, thereby categorically meeting the first element of a CIMT.

As for the second element of a CIMT – reprehensible conduct – the majority attempts to downplay the seriousness of a § 4 violation by concocting a few creative hypotheticals to suggest that someone could violate the statute without engaging in "inherently base, vile, or depraved" behavior. Maj. Op. at 9–10. But the fact that one can imagine mitigating factors that might be relevant at a sentencing hearing or even justify a non-prosecution agreement does nothing to obscure the reprehensible nature of concealing a felony from law enforcement officials. Take, for example, the majority's hypothetical involving the eyewitness to a gang shooting who falsely denies knowledge of those involved in the shooting for fear that "the shooters or other gang members will retaliate against him and

10

his family." *Id.* at 9. Although the majority concedes that this individual violated § 4, it nevertheless insists that "[n]o one can seriously argue that what he did was 'inherently base, vile, or depraved." *Id.* at 9. But by that logic, perjury and obstruction of justice would also be excused and exempted from treatment as a CIMT, a conclusion that is difficult to square with our decision in *Rodriguez*, in which we held that "deceit and an intent to impair the efficiency and lawful functioning of the government" is "alone . . . sufficient to categorize a crime as a CIMT." 451 F.3d at 64; *see also United States ex rel. Karpay v. Uhl*, 70 F.2d 792, 793 (2d Cir. 1934) ("It cannot be successfully contended that perjury is not a crime 'involving moral turpitude.'"); *Padilla v. Gonzales*, 397 F.3d 1016, 1021 (7th Cir. 2005) (finding conviction for obstruction of justice to be a CIMT since "knowingly furnishing false information . . . specifically entails dishonesty and thus implicates moral turpitude"), *overruled on other grounds by Ali v. Mukasey*, 521 F.3d 737 (7th Cir. 2008); *id.* ("Given that Padilla's crime involves furnishing false information, and requires the specific intent to conceal criminal activity, it can fairly be categorized as contrary to justice, honesty, or morality . . . ." (internal quotation marks and citation omitted)); *Smalley v. Ashcroft*, 354 F.3d 332, 337–38 (5th Cir.

11

2003) (reading "fraudulent" intent, and thus moral turpitude, into conduct "the likely effect of which would be to mislead or conceal" (citation omitted)).

The majority's other hypothetical, involving a parent who flushes his child's felony-level drug stash down the toilet, fares no better. Once again, the majority announces that even if the parent violated § 4, "no one could seriously contend that the parent['s] conduct was corrupt or vile or transgressed accepted rules of morality." Maj. Op. at 10. But as long as the parent's act was intended to conceal the child's felony (as opposed to merely preventing his use of drugs or preserving his health and safety, which would not be sufficient to support a § 4 violation), the parent's conduct is at least as repugnant as the conduct found to be reprehensible in *Rodriguez*. The fact that there may be extenuating circumstances that make the parent's conduct in this case more sympathetic or less culpable than that of a drug-dealing coconspirator does not mean that the violation is not a CIMT. Indeed, there might be sympathetic reasons for a person to submit a false passport or asylum application too, but the law in this Circuit is clear: so long as the criminal statute "involves deceit and an intent to impair the efficiency and lawful functioning of the government," the offense satisfies the conditions of a CIMT.

12

*Rodriguez*, 451 F.3d at 64. Surely, the investigation and prosecution of serious crimes is at least as important a government function as the issuance of passports.

To my mind, it is hard to disagree with the BIA's conclusion that "the affirmative act of concealment in the misprision context involves dishonest and deceitful behavior, which runs contrary to accepted societal duties and is [thus] morally turpitudinous conduct." *Matter of Mendez*, 27 I. & N. Dec. at 222. As the Supreme Court itself has recognized, "[c]oncealment of crime has been condemned throughout our history," and even in modern times, "gross indifference to the duty to report known criminal behavior remains a badge of irresponsible citizenship." *Roberts v. United States*, 445 U.S. 552, 557 (1980). I therefore agree with the Eleventh Circuit that "misprision of a felony is a crime of moral turpitude because it necessarily involves an affirmative act of concealment or participation in a felony, behavior that runs contrary to accepted societal duties and involves dishonest or fraudulent activity." *Itani*, 298 F.3d at 1216.

### III.

For the foregoing reasons, I would join the Fifth and Eleventh Circuits in holding that misprision of a felony in violation of 18 U.S.C. § 4 is categorically a

crime involving moral turpitude. Accordingly, I would deny Mendez's petition for review.