19-4289-ag
*Jang v. Garland*

# In the
# United States Court of Appeals
## For the Second Circuit

August Term, 2020

(Submitted: February 26, 2021      Decided: May 9, 2022      Amended: July 29, 2022) *

Docket No. 19-4289

JUNG HEE JANG, AKA JUNG H. JANG, AKA JUNGHEE JANG,

*Petitioner*,

–v.–

MERRICK B. GARLAND, UNITED STATES ATTORNEY GENERAL,**

*Respondent*.

B e f o r e :

KEARSE and CARNEY, *Circuit Judges*.***

---

* After due consideration of the Attorney General's petition for panel rehearing, we hereby deny the petition and, for clarification, *nostra sponte* amend our opinion.

** Pursuant to Federal Rule of Appellate Procedure 43(c)(2), Attorney General Merrick B. Garland is automatically substituted for former Acting Attorney General Jeffrey A. Rosen as Respondent.

*** Judge Robert A. Katzmann, originally a member of the panel that heard this case, died before this Opinion issued. The two remaining judges, being in agreement, have decided the matter. 2d Cir. IOP E(b).

Petitioner Jung Hee Jang, a native and citizen of South Korea, seeks review of a Board of Immigration Appeals decision affirming an Immigration Judge's denial of Jang's application for cancellation of removal. *In re Jung Hee Jang*, No. A206-223-573 (B.I.A. Nov. 20, 2019), *aff'g* No. A206-223-573 (Immig. Ct. N.Y.C. Apr. 19, 2018). The agency found Jang ineligible for cancellation because of her state conviction for attempted second-degree money laundering, *see* N.Y. Penal L. § 470.15(1)(b)(ii)(A), which it deemed a "crime involving moral turpitude" ("CIMT") under the Immigration and Nationality Act, *see* 8 U.S.C. § 1182(a)(2). We agree with Jang that, because her crime of conviction lacks the requisite scienter, it is not a CIMT. She is therefore eligible for cancellation of removal.

PETITION GRANTED.

––––––––––––––

David K. S. Kim, Law Office of David K. S. Kim, P.C., Flushing, NY, *for Petitioner*.

Ethan P. Davis, Acting Assistant Attorney General, Shelley R. Goad, Assistant Director; Tim Ramnitz, Attorney, Office of Immigration Litigation, United States Department of Justice, Washington, DC, *for Respondent*.

––––––––––––––

CARNEY, Circuit Judge:

Petitioner Jung Hee Jang, a native and citizen of South Korea, seeks review of a Board of Immigration Appeals ("BIA") decision finding her ineligible for cancellation of removal because of her 2014 New York conviction for attempted second-degree money laundering under N.Y. Penal Law §§ 110 and 470.15(1)(b)(ii)(A) (McKinney 2009). *In re Jung Hee Jang*, No. A206 -223-573 (B.I.A. Nov. 20, 2019), *aff'g* No. A206-223-573 (Immig. Ct. N.Y.C. Apr. 19, 2018). The agency deemed her offense a crime involving moral turpitude ("CIMT") under the Immigration and Nationality Act ("INA" or "the Act"), 8 U.S.C. § 1182(a)(2)(A)(i)(I); *see also* 8 U.S.C. § 1229b(b)(1)(C) (permitting Attorney General to cancel removal of noncitizen only when noncitizen "has not been convicted

2

of an offense under section 1182(a)(2)"). On review, we agree with Jang that her offense of conviction lacks the scienter required to qualify as a CIMT. We therefore GRANT her petition for review and REMAND the case to the agency for further consideration.

## BACKGROUND[1]

Jang entered the United States without inspection in 1995. She is now a single parent and the sole provider for her U.S.-citizen daughter. In 2014, she pleaded guilty under a plea agreement to attempted money laundering in the second degree under N.Y. Penal Law §§ 110 and 470.15(1)(b)(ii)(A).[2] The agreement provided that she would receive a sentence of "time served." J. App'x 310. Days later, the Department of Homeland Security served Jang with a Notice to Appear, charging her as removable for having entered the United States without inspection. Jang did not contest removability.

---

[1] The relevant facts are drawn from the record and are not subject to dispute.

[2] N.Y. Penal Law § 110.00 is New York's general attempt statute. It provides that a person is guilty of attempt "when, with intent to commit a crime, he engages in conduct which tends to effect the commission of such crime." *Id.* The substantive object of Jang's attempt crime—second-degree money laundering—is defined in § 470.15(1)(b)(ii)(A). That section provides in relevant part:

> A person is guilty of money laundering in the second degree when:
>
> 1. Knowing that the property involved in one or more financial transactions represents: . . .
>
> > (b) the proceeds of *specified criminal conduct*, he or she conducts one or more such financial transactions which in fact involve the proceeds of specified criminal conduct: . . .
> >
> > > (ii) Knowing that the transaction or transactions in whole or in part are designed to:
> > >
> > > > (A) conceal or disguise the nature, the location, the source, the ownership or the control of the proceeds of specified criminal conduct.

N.Y. Penal L. § 470.15(1)(b)(ii)(A) (McKinney 2009) (emphasis added). The full text of § 470.15 is provided in Appendix A to this Opinion.

3

She sought cancellation of removal, however, under § 240A(b) of the Act. 8 U.S.C. § 1229b(b)(1).

An immigration judge ("IJ") denied Jang's application. Determining that her crime was a CIMT, it ruled that the conviction rendered her ineligible for cancellation. *See* 8 U.S.C. §§ 1229b(b)(1)(C), 1182(a)(2)(A)(i)(I). In its CIMT determination, the IJ relied on the BIA's 2007 decision in *In re Tejwani*, 24 I. & N. Dec. 97, in which the agency held that the substantive crime of second-degree money laundering, then defined in N.Y. Penal Law § 470.10(1) (McKinney 1999), was a CIMT. The agency reasoned there that a "person who deliberately takes affirmative steps to conceal or disguise the proceeds of criminal conduct"—factors that it saw as part of the relevant crime—"acts in an inherently deceptive manner and impairs governmental function," sufficing to establish a CIMT. *In re Tejwani*, 24 I. & N. Dec. at 99. Tejwani's conviction for violating § 470.10(1) thereby satisfied the agency's definition of a CIMT, and the decision (as the IJ then decided) controlled the outcome in Jang's case as well. *Id.*[3]

Jang appealed the IJ's decision. She argued principally that the offense of second-degree money laundering—as now defined by § 470.15(1)(b)(ii)(A)—does not qualify as a CIMT because it does not "involve intent to defraud the government through a deliberate act to conceal illegal activity or attempting to make the appearance of legitimate source of funds," Petitioner's Br. at 21, and that the BIA erred in its 2007

---

[3] In an unpublished 2009 decision, the U.S. Court of Appeals for the Third Circuit adopted a different view and ruled that the substantive New York crime defined by N.Y. Penal Law § 470.10 (McKinney 1999) does *not* qualify as a CIMT. *See Tejwani v. Att'y Gen. of the U.S.*, 349 F. App'x 719 (3d Cir. 2009) (non-precedential decision). It determined that the New York statute "reach[ed] a far broader range of conduct" than did the BIA's definition of a CIMT and was "broader than classic money laundering" in that it did not "require a deliberate act to conceal illegal activity." *Id.* at 723-24. Accordingly, in the Third Circuit's view, the crime in question did "not meet the BIA's definition of moral turpitude." *Id.* at 725. Outside the Third Circuit, however, the BIA continued to adhere to its own *Tejwani* ruling.

4

*Tejwani* decision. The BIA dismissed her appeal, agreeing with the IJ that its *Tejwani* decision controlled.

Jang timely petitioned for review. Because we agree with Jang that New York second-degree money laundering—as defined in the applicable version of N.Y. Penal Law § 470.15(1)(b)(ii)(A)—does not impose the scienter requirement needed to constitute a CIMT, we grant her petition for review and remand for further proceedings.

## DISCUSSION

When, as here, the BIA adopts and expands upon an IJ's decision, we review both the IJ and BIA decisions. *See Wangchuck v. Dep't of Homeland Sec.*, 448 F.3d 524, 528 (2d Cir. 2006); *Chen v. Gonzales*, 417 F.3d 268, 271 (2d Cir. 2005). Our jurisdiction to review the denial of a request for cancellation of removal—a form of discretionary relief—is limited to constitutional questions and questions of law. *See* 8 U.S.C. § 1252(a)(2)(B)(i), (D). Whether a petitioner's conviction constitutes a CIMT presents a reviewable question of law. *See Wala v. Mukasey*, 511 F.3d 102, 105 (2d Cir. 2007).

We review *de novo* the question whether "a petitioner's crime of conviction contains those elements which have been properly found to constitute a CIMT." *Gill v. INS*, 420 F.3d 82, 89 (2d Cir. 2005) (emphasis omitted).[4] To answer this question, we employ the "categorical approach," looking to the elements of the crime of conviction and focusing "on the intrinsic nature of the offense rather than on the factual circumstances surrounding any particular violation." *Id.* We "must presume that the conviction rested upon nothing more than the least of the acts criminalized, and then

---

[4] Unless otherwise indicated, this Opinion omits internal quotation marks, alterations, citations, and footnotes in text quoted from reported decisions.

determine whether even those acts are encompassed by the generic . . . offense." *Moncrieffe v. Holder*, 569 U.S. 184, 190-91 (2013).

 1. *Did the BIA err by relying on its 2007 decision in* In re Tejwani?

The BIA concluded that N.Y. Penal Law § 470.15(1)(b)(ii)(A), defining second-degree money-laundering—the crime that Jang was convicted of attempting to commit—is a CIMT. In so ruling, the agency relied on its 2007 decision in *In re Tejwani*, 24 I. & N. Dec. at 99, which involved a second-degree money-laundering conviction based on conduct that occurred sometime before April 2000, *see Tejwani*, 349 F. App'x at 720, 721 n.2 (3d Cir.) ("Tejwani was admitted to the United States as a lawful permanent resident in March 1995"; "the offense was committed within five years of [his] admission").

At the time of Tejwani's offense conduct, second-degree money laundering was defined, as there relevant, in N.Y. Penal Law § 470.10(1) and—as set out in Appendix B—was made applicable to conduct in which the defendant, *inter alia*, "intentionally" acted "to conceal or disguise the nature, the location, the source, the ownership, or the control of such proceeds." The BIA viewed this offense as a CIMT. But that version of § 470.10(1) defining second-degree money laundering was in effect only until October 31, 2000. Jang's conviction of attempted second-degree money laundering was based on her conduct in 2012 and 2013. By that time, the New York law prohibiting money laundering had been amended: as of November 1, 2000, second-degree money laundering was defined generally in § 470.15, rather than § 470.10; and—as set out in Appendix A—the specific clause under which Jang was convicted, § 470.15(1)(b)(ii)(A), requires knowledge but not intent. Thus, the BIA's reliance on § 470.10(1) to determine that Jang's crime was a CIMT was indisputably misplaced, either as a reference to the *Tejwani* provision that had been superseded by § 470.15(1)(b)(ii)(A) before Jang's offense

6

conduct, or as a reference to the current § 470.10(1) (McKinney 2009), which defines money laundering in the third, not second, degree.[5]

>    2.    *What is a "crime involving moral turpitude" for purposes of the INA?*

The INA provides that "any alien convicted of, or who admits having committed, or who admits committing acts which constitute the essential elements of . . . a crime involving moral turpitude (other than a purely political offense)" is ineligible for cancellation of removal. 8 U.S.C. § 1182(a)(2)(A)(i); *see* 8 U.S.C. § 1229b(b)(1)(C). The Act does not define "crime involving moral turpitude," however. Accordingly, we defer to the BIA's reasonable construction of that term. *See Rodriguez v. Gonzales*, 451 F.3d 60, 63 (2d Cir. 2006).

The BIA recently described "crime of moral turpitude" as one involving

> conduct that is inherently base, vile, or depraved, and contrary to the accepted rules of morality and the duties owed between persons or to society in general. To involve moral turpitude, a crime requires two essential elements: reprehensible conduct and a culpable mental state.

*Matter of Silva-Trevino*, 26 I. & N. Dec. 826, 833-34 (B.I.A. 2016). To determine whether a crime is a CIMT, the agency has long asked "whether the act is accompanied by a

---

[5] In considering Jang's case, the BIA appears to have mistakenly viewed the second-degree money-laundering statute under which Jang pleaded guilty and the money-laundering statute that it reviewed in *Tejwani* as differing only with respect to the amount of money involved. (The current statutory scheme operates that way, *see* N.Y. Penal L. §§ 470.10, 470.15 ($50,000 for third-degree and $100,000 for second-degree money laundering), but the now superseded statutory scheme did not.) In their briefs on appeal, both Jang and the government appear to overlook the distinction between the two definitions of second-degree money laundering. *See* Petitioner's Br. at 19-22 (not noting that the BIA in *In re Tejwani* was interpreting the 1999 statute defining second-degree money laundering); Respondent's Br. at 12-13 (contending that "for purposes of determining moral turpitude there is no material difference" between Jang's statute of conviction and the 1999 statute at issue in *In re Tejwani*). In other respects, the parties quote and discuss the present version of the statute.

vicious motive or a corrupt mind." *Matter of Franklin*, 20 I. & N. Dec. 867, 868 (B.I.A. 1994). Consistent with this precedent, we have observed that "the focus of the analysis is generally on the mental state reflected in the statute," because "it is in the intent that moral turpitude inheres." *Efstathiadis v. Holder*, 752 F.3d 591, 595 (2d Cir. 2014).

Both this Court and the BIA "have repeatedly made clear that the indispensable component of a CIMT is evil intent, which means a specific mental purpose that is inherently base, vile, or depraved." *Mendez v. Barr*, 960 F.3d 80, 84 (2d Cir. 2020); *see also Matter of Serna*, 20 I. & N. Dec. 579, 582 (B.I.A. 1992) (noting that even some serious crimes, such as the possession or sale of controlled substances, "do not involve moral turpitude, because evil intent is not an element of the offense"). In *Mendez*, we opined that knowledge of a crime and concealment of a crime are not categorically sufficient types of scienter to denote a CIMT if the statute of conviction does not require a "specific mental purpose" to conceal. 960 F.3d at 84-85. In *Tejwani*, the BIA also advised that "[a] crime that impairs and obstructs a function of a department of government by defeating its efficiency or destroying the value of its lawful operations by deceit, graft, trickery, or dishonest means is a crime involving moral turpitude." 24 I. & N. Dec. at 98.[6] This definition of CIMT sits in some tension with other versions of the BIA's definition described above. Thus, the BIA has held that conduct that is "inherently base, vile, or depraved" constitutes a CIMT, *Matter of Robles-Urrea*, 24 I. & N. Dec. 22, 25 (B.I.A. 2006), while it also describes conduct of a seemingly lower order of depravity—conduct that impairs the efficient functioning of government "by deceit, graft, [or] trickery," for example—as constituting a CIMT, *In re Jurado-Delgado*, 24 I. & N. Dec. 29,

---

[6] *See also Cupete v. Garland*, 29 F.4th 53, 58 (2d Cir. 2022) (concluding that a conviction under 18 U.S.C. § 1001(a) is a CIMT because it "necessarily requires 'deceit and an intent to impair the efficiency and lawful functioning of the government.'") (quoting *Rodriguez*, 451 F.3d at 64, and citing *Flores*, 17 I. & N. Dec. at 230).

8

35 (B.I.A. 2006) (citing *Matter of Flores*, 17 I. & N. Dec. 225, 229 (B.I.A. 1980)). It has so held regardless of any finding that such "trickery" is also "inherently base, vile, or depraved." We need not resolve this tension here, however, because, as we will explain, Jang's statute of conviction lacks the required intent under any version of the BIA's CIMT definition.

3. *What was Jang's crime of conviction?*

As described above, Jang was convicted of attempted money laundering in the second degree in violation of § 470.15(1)(b)(ii)(A).[7] In considering the nature of the crime for CIMT purposes, where a conviction is for attempt we will consider whether the substantive crime is a CIMT. *See Santana-Felix v. Barr*, 924 F.3d 51, 54 (2d Cir. 2019). In Jang's case, we thus focus on the crime of money laundering in the second degree. The categorical approach requires that her crime, "by definition, and in all instances, contain each of those elements that constitute a CIMT." *Mendez*, 960 F.3d at 84. Before we can undertake that analysis, however, we must consider which elements of the multifaceted § 470.15 were necessary elements of the substantive crime.

Section 470.15 (set forth in part in note 2, above, and in full in Appendix A) contains what could be considered at least three separate crimes, one in each of its three high-level subparts: (1), (2), and (3). Each of its three subparts, in turn, arguably defines multiple offenses. Section 470.15 as a whole might also reasonably be described as

---

[7] At her plea allocution, the district court described and she accepted that her crime was as follows: "[F]rom about November 19, 2012, to October 18, 2013, [Jang] acting together with others each aiding one another knowing that the property that was involved in financial transactions that [Jang] w[as] involved in was really the proceeds of criminal activity, [Jang] nonetheless attempted to enter into one or more financial transactions, which involved those proceeds of criminal activity, knowing that the transactions were being conducted in whole or in part for the purpose of concealing or disguising the nature and source of the proceeds of criminal conduct[.]" J. App'x 314-15.

defining a single divisible offense whose elements can be satisfied in alternative ways. *See generally Descamps v. United States*, 570 U.S. 254, 261-62 (2013). If § 470.15 is best read as setting out separate crimes, we straightforwardly apply the categorical approach to the crime defined in § 470.15(1)(b)(ii)(A). If it describes a single offense satisfied by alternative elements, we apply the modified categorical approach to determine "what crime, with what elements, [Jang] was convicted of." *Mathis v. United States*, 136 S. Ct. 2243, 2249 (2016).

Reasonable people may differ over whether the statute is divisible in many or few ways. Whichever the better approach, however, the result of our analysis is unaffected. Jang's plea colloquy and charging documents reflect—and neither party contests—that she was convicted of only the elements described by § 470.15(1)(b)(ii)(A). *See* J. App'x 303 (criminal information); *id.* 312-17 (plea hearing);[8] *see also Mathis*, 136 S. Ct. at 2249 (the modified categorical approach directs the court to look to a "limited class of documents" such as the indictment or plea agreement to determine what crime a defendant was convicted of). Neither party contends that Jang was convicted of an

---

[8] Jang averred in a 2017 affidavit, translated into English, that she understood the facts of her offense as follows: "[A] credit card machine at the Spa[] [her place of employment] was registered under my name, there had been some illegal activities such as drugs and prostitution between the Spa and some customer, which resulted in charges against me including money laundering. Not knowing any of this, I agreed to register a credit card machine under my name based on the owner's representation that she would give me about 10% commission for proceeds from credit card transactions if I agree to register the machine under my name and withdraw cash for the Spa[] at the Spa's bank after credit card transactions are credited to the Spa's business account. Because I worked at the Spa[] for only 3 months, I did not know with certainty that illegal activities were going on there. However, I did have suspicions since interactions among the owner, some employees and some customers appeared suspicious, and my biggest mistakes [sic] was not quitting right away after I felt such suspicion." J. App'x 295-96. The government adds that she "also delivered envelopes containing drugs, but did not initially know the envelopes contained drugs. [She] stated she continued to work for the spa after finding out the envelopes contained drugs but stopped delivering drugs." Respondent's Br. 7 (citing J. App'x 192).

attempt to commit any other offense or that Jang did not satisfy her burden to show that § 470.15(1)(b)(ii)(A) was the related substantive crime. *See Pereida v. Wilkinson*, 141 S. Ct. 754, 763 (2021) (holding that noncitizen seeking cancellation of removal bears burden of showing which subsection of multipart statute was his crime of conviction). We therefore treat her object crime of conviction as that defined by § 470.15(1)(b)(ii)(A), and we examine its elements to determine if the crime— categorically understood—is congruent with the INA's definition of CIMT.

As noted earlier, section 470.15(1)(b)(ii)(A) provides in relevant part:

> A person is guilty of money laundering in the second degree when:
>
> > 1. Knowing that the property involved in one or more financial transactions represents: . . .
> >
> > (b) the proceeds of specified criminal conduct, he or she conducts one or more such financial transactions which in fact involve the proceeds of specified criminal conduct: . . .
> >
> > > (ii) *Knowing that the transaction or transactions in whole or in part are designed to:*
> > >
> > > > (A) *conceal or disguise the nature, the location, the source, the ownership or the control of the proceeds of specified criminal conduct*[.]

(Emphasis added.) The phrase "specified criminal conduct" is defined elsewhere in the New York Penal Law. *See* N.Y. Penal L. §§ 470.00(5), 460.10(1).

> *4. Is the New York crime of second-degree money laundering a CIMT?*

Section 470.15(1)(b)(ii)(A) establishes the following elements of the crime of money laundering in the second degree:

(1) knowledge that the property involved in the financial transaction is the proceeds of specified criminal conduct;

(2) conduct of a financial transaction that involves the proceeds of the specified criminal conduct;

(3) action with knowledge that the financial transaction is designed to conceal or disguise the nature, location, source, ownership, or control of the proceeds; and

(4) the total valuation of the property involved in the financial transaction exceeds $100,000.

Although the statute requires the defendant's knowledge that the financial transaction is "designed to . . . conceal or disguise the nature, the location, the source, the ownership or the control of the proceeds of specified criminal conduct," § 470.15(1)(b)(ii)(A), it does not require that the offender act with the "evil intent," *Matter of Serna*, 20 I. & N. Dec. at 584, that the BIA has considered to be inherent in a CIMT: that is, an intention to *conceal* the underlying criminal activity that created the proceeds, to *impair* government function, or to *deceive* the government. *Compare Rodriguez*, 451 F.3d at 64 ("[D]eceit and an intent to impair the efficiency and lawful functioning of the government . . . [are] sufficient to categorize a crime as a CIMT."), *with Mendez*, 960 F.3d at 88 ("[M]ere intent to conceal (or an equivalent *mens rea*) is not, on its own, sufficient" for a CIMT).

In this way, the statute defining Jang's object crime of conviction—that is, the relevant clause of the present version of second-degree money laundering—resembles federal misprision of a felony, *see* 18 U.S.C. § 4, a crime whose immigration import this Court recently considered in *Mendez*. We concluded it does not qualify as a CIMT. *See Mendez*, 960 F.3d at 88. We reasoned that, although § 4 requires the offender's knowledge that a felony was committed and his knowing failure to report the felony, it does not require that the offender act with the depraved or evil intent necessary to qualify as a CIMT. *Id.* at 84-86, 89.

12

Our *Mendez* ruling is consistent with our precedent and those BIA decisions holding that "generally . . . [a] crime is not one involving moral turpitude" when the criminal statute is satisfied by something less than either an intent to defraud or an equivalently malign purpose. *Tamara Mendez v. Mukasey*, 547 F.3d 345, 347 (2d Cir. 2008); *Serna*, 20 I. & N. Dec. at 585 (holding that possession of an altered immigration document is not a CIMT because, "[a]lthough [the statute] requires knowledge that the immigration document was altered, such knowledge is not necessarily equated with the intention to use the document to defraud the United States Government"); *see also Ahmed v. Holder*, 324 F. App'x 82, 84 (2d Cir. 2009) (summary order) (misrepresenting one's social security number in violation of 42 U.S.C. § 408(a)(7)(B) "for any purpose" not a CIMT because statute does not require proof of intent to defraud nor did the crime "necessarily impair any governmental services").

Like the federal misprision statute, second-degree money laundering under § 470.15(1)(b)(ii)(A) does not require that the individual conducting the illicit transaction act with the "evil intent" or "specific mental purpose that is inherently base, vile or depraved" needed to qualify as a CIMT. *Mendez*, 960 F.3d at 84. The statute provides that the intent requirement is satisfied merely by knowledge that the financial transaction is designed to "conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds of specified criminal conduct." N.Y. Penal L. § 470.15(1)(b)(ii)(A); *see People v. Baez*, 862 N.Y.S.2d 273, 274-75 (Sup. Ct. 2008) (distinguishing § 470.15(1)(b)(ii)(A), which requires showing "knowledge that the transaction was designed to conceal the . . . proceeds of past criminal conduct," from § 470.15(1)(b)(i)(A), which requires showing the transaction was done with intent to

13

promote the carrying on of specified criminal conduct).[9] The statute thus does not require an "intent to impair the efficiency and lawful functioning of the government," *Mendez*, 960 F.3d at 88, or intent to conceal the underlying crime that created the criminal proceeds.[10] The knowledge required for conviction under § 470.15(1)(b)(ii)(A) falls well short of the depravity described by the BIA as requisite for a CIMT. The BIA therefore erred in treating Jang's conviction for attempted money laundering in the second degree as a CIMT and on that basis denying her application for cancellation of removal.

## CONCLUSION

For the foregoing reasons, the petition for review is **GRANTED**. The case is **REMANDED** to the agency for further consideration of Jang's application.

---

[9] *See also* William C. Donnino, Practice Commentaries, McKinney's Cons. Laws of N.Y., Penal Law §§ 470.00 *et seq.* (to satisfy mens rea element for New York money laundering, "the actor need not intend to launder the proceeds; knowledge that the transaction is designed to accomplish that end is sufficient").

[10] Neither the recent nor the superseded version of the statute require even that the transaction be designed to conceal proceeds *from the government*, rather than from a friend, family member, or third party. *See, e.g., Tejwani*, 349 F. App'x at 724 ("For example, knowingly depositing the proceeds of non-turpitudinous conduct into a bank account in exchange for a cashiers check to avoid being mugged disguises the location of those proceeds, but does not create the appearance of legitimate wealth, suggest dishonesty, or necessarily hinder detection of the underlying conduct." (pre-2000 version of second-degree money laundering)).

## APPENDIX A

### N.Y. Penal L. § 470.15

### Money laundering in the second degree (McKinney 2009)

A person is guilty of money laundering in the second degree when:

1. Knowing that the property involved in one or more financial transactions represents:

(a) the proceeds of the criminal sale of a controlled substance, he or she conducts one or more such financial transactions which in fact involve the proceeds of the criminal sale of a controlled substance:

(i) With intent to:

(A) promote the carrying on of specified criminal conduct; or

(B) engage in conduct constituting a felony as set forth in section eighteen hundred three, eighteen hundred four, eighteen hundred five, or eighteen hundred six of the tax law; or

(ii) Knowing that the transaction or transactions in whole or in part are designed to:

(A) conceal or disguise the nature, the location, the source, the ownership or the control of the proceeds of specified criminal conduct; or

(B) avoid any transaction reporting requirement imposed by law; and

(iii) The total value of the property involved in such financial transaction or transactions exceeds fifty thousand dollars; or

(b) the proceeds of specified criminal conduct, he or she conducts one or more such financial transactions which in fact involve the proceeds of specified criminal conduct:

(i) With intent to:

(A) promote the carrying on of specified criminal conduct; or

(B) engage in conduct constituting a felony as set forth in section eighteen hundred three, eighteen hundred four, eighteen hundred five, or eighteen hundred six of the tax law; or

(ii) Knowing that the transaction or transactions in whole or in part are designed to:

(A) conceal or disguise the nature, the location, the source, the ownership or the control of the proceeds of specified criminal conduct; or

(B) avoid any transaction reporting requirement imposed by law; and

(iii) The total value of the property involved in such financial transaction or transactions exceeds one hundred thousand dollars; or

2. Knowing that one or more monetary instruments represent:

(a) the proceeds of the criminal sale of a controlled substance, he or she transports, transmits, or transfers or attempts to transport, transmit or transfer, on one or more occasions, monetary instruments which in fact represent the proceeds of the criminal sale of a controlled substance from a place in any county in this state to or through a place outside that county or to a place in any county in this state from or through a place outside that county:

(i) With intent to promote the carrying on of specified criminal conduct; or

(ii) Knowing that such transportation, transmittal or transfer is designed in whole or in part to:

(A) conceal or disguise the nature, the location, the source, the ownership or the control of the proceeds of specified criminal conduct; or

(B) avoid any transaction reporting requirement imposed by law; and

(iii) The total value of such monetary instrument or instruments exceeds fifty thousand dollars; or

16

(b) the proceeds of specified criminal conduct, he or she transports, transmits, or transfers or attempts to transport, transmit or transfer, on one or more occasions, monetary instruments which in fact represent the proceeds of specified criminal conduct from a place in any county in this state to or through a place outside that county or to a place in any county in this state from or through a place outside that county:

>(i) With intent to promote the carrying on of specified criminal conduct; or

>(ii) Knowing that such transportation, transmittal or transfer is designed in whole or in part to:

>>(A) conceal or disguise the nature, the location, the source, the ownership or the control of the proceeds of specified criminal conduct; or

>>(B) avoid any transaction reporting requirement imposed by law; and

>(iii) The total value of such monetary instrument or instruments exceeds one hundred thousand dollars; or

3. He or she conducts one or more financial transactions involving property represented to be:

>(a) the proceeds of the criminal sale of a controlled substance, or represented to be property used to conduct or facilitate the criminal sale of a controlled substance:

>(i) With intent to:

>>(A) promote the carrying on of specified criminal conduct; or

>>(B) conceal or disguise the nature, the location, the source, the ownership or the control of property believed to be the proceeds of specified criminal conduct; or

>>(C) avoid any transaction reporting requirement imposed by law; and

>(ii) The total represented value of the property involved in such financial transaction or transactions exceeds fifty thousand dollars; or

(b) the proceeds of specified criminal conduct, or represented to be property used to conduct or facilitate specified criminal conduct:

(i) With intent to:

(A) promote the carrying on of specified criminal conduct;

(B) conceal or disguise the nature, the location, the source, the ownership or the control of property believed to be the proceeds of specified criminal conduct; or

(C) avoid any transaction reporting requirement imposed by law; and

(ii) The total represented value of the property involved in such financial transaction or transactions exceeds one hundred thousand dollars.

Money laundering in the second degree is a class C felony.

# APPENDIX B

## N.Y. Penal L. § 470.10

## Money laundering in the second degree (as codified before October 31, 2000)

A person is guilty of money laundering in the second degree when that person exchanges or receives in exchange, in one or more transactions, one or more monetary instruments which are the proceeds of specified criminal conduct and have a total value exceeding ten thousand dollars for one or more other monetary instruments and/or equivalent property when that person knows that the monetary instrument or instruments exchanged or received in exchange are the proceeds of any criminal conduct and that person:

1. intentionally makes the exchange to conceal or disguise the nature, the location, the source, the ownership, or the control of such proceeds; or

2. intentionally makes the exchange to aid himself or another person to commit or profit or benefit from specified criminal conduct; or

3. knows the exchange will conceal or disguise the nature, the location, the source, the ownership, or the control of such proceeds which are the proceeds of the criminal sale of a controlled substance; provided, however, that nothing in this subdivision shall make it unlawful to return funds held in escrow:

   (a) as a portion of a purchase price for real property pursuant to a contract of sale; or

   (b) to satisfy the tax or other lawful obligations arising out of an administrative or judicial proceeding concerning the person who provided the escrow funds.

Money laundering in the second degree is a class E felony.