*Kwok Sum Wong v. Garland*

# United States Court of Appeals
# For the Second Circuit

August Term 2023

Argued:  November 6, 2023
Decided:  March 11, 2024

No. 22-6185

KWOK SUM WONG,

*Petitioner,*

*v.*

MERRICK B. GARLAND, UNITED STATES
ATTORNEY GENERAL,

*Respondent.*

On Petition for Review of a Final Decision
Of the Board of Immigration Appeals

Before:     WALKER, RAGGI, SULLIVAN, *Circuit Judges.*

Kwok Sum Wong, a Hong Kong native and citizen of China, petitions for review of a decision of the Board of Immigration Appeals (the "BIA") affirming the decision of an Immigration Judge ("IJ") finding that Wong was removable under section 237 of the Immigration and Nationality Act (the "INA") because he was "convicted" for "two crimes involving moral turpitude." 8 U.S.C. § 1227(a)(2)(A)(ii).  Wong's predicate offenses were theft by deception in violation of N.J. Stat. Ann. § 2C:20-4 and second-degree forgery in violation of N.Y. Penal Law § 170.10.

After multiple appeals to the BIA, petitions to this Court, and remands to the agency, the BIA ultimately issued the challenged precedential decision dismissing Wong's appeal of the IJ's removal order. *See Matter of Wong*, 28 I. & N. Dec. 518, 528 (B.I.A. 2022). In doing so, the BIA clarified that the meaning of "conviction" under 8 U.S.C. § 1101(a)(48)(A) turns on whether the predicate offenses were criminal proceedings with "minimum constitutional protections," including the requirement of "proof beyond a reasonable doubt" and "the rights to confront one's accuser, a speedy and public trial, notice of the accusations, compulsory process for obtaining witnesses in one's favor, and [not] being put in jeopardy twice for the same offense." *Id.* at 523–24. The agency then concluded that Wong's October 3, 2005 adjudication of guilt on a New Jersey disorderly persons offense was a "conviction" under 8 U.S.C. § 1101(a)(48)(A) and that both the New Jersey offense and the second-degree forgery offense for which he stood convicted in New York were crimes involving moral turpitude ("CIMTs") under 8 U.S.C. § 1227(a)(2)(A)(ii). Wong's petition followed.

Having reviewed the record and the law relevant to Wong's challenge, we hold that (1) the BIA's interpretation of "conviction" under 8 U.S.C. § 1101(a)(48)(A) was not arbitrary or capricious, (2) the "minimum constitutional protections" test to ascertain a "conviction" retroactively applies to Wong's case, (3) second-degree forgery in violation of N.Y. Penal Law § 170.10 is a CIMT, and (4) the statutory phrase "crime involving moral turpitude" is not unconstitutionally vague. Accordingly, we **DENY** the petition for review.

DENIED.

BENJAMIN HAYES, Goodwin Procter LLP, Washington, DC (David J. Zimmer, Goodwin Procter LLP, Boston, MA; Marget W. Wong, Joseph C. Fungsang, Margaret Wong & Associates LLC, Cleveland, OH, *on the brief*), *for Petitioner*.

IMRAN R. ZAIDI (Brian M. Boynton, Principal Deputy Assistant, Lindsay B. Glauner, Senior Litigation Counsel, Craig A. Newell, Jr.,

Senior Litigation Counsel, *on the brief*), Civil Division, U.S. Department of Justice, Washington, DC, *for Respondent*.

RICHARD J. SULLIVAN, *Circuit Judge*:

Kwok Sum Wong, a Hong Kong native and citizen of China, petitions for review of a decision of the Board of Immigration Appeals (the "BIA") affirming the decision of an Immigration Judge ("IJ") finding that Wong was removable under section 237 of the Immigration and Nationality Act (the "INA") because he was "convicted" for "two crimes involving moral turpitude." 8 U.S.C. § 1227(a)(2)(A)(ii). Wong's predicate offenses were theft by deception in violation of N.J. Stat. Ann. § 2C:20-4 and second-degree forgery in violation of N.Y. Penal Law § 170.10.

After multiple appeals to the BIA, petitions to this Court, and remands to the agency, the BIA ultimately issued the challenged precedential decision dismissing Wong's appeal of the IJ's removal order. *See Matter of Wong*, 28 I. & N. Dec. 518, 528 (B.I.A. 2022). In doing so, the BIA clarified that the meaning of "conviction" under 8 U.S.C. § 1101(a)(48)(A) turns on whether the predicate offenses were criminal proceedings with "minimum constitutional protections," including the requirement of "proof beyond a reasonable doubt" and "the rights to confront one's accuser, a speedy and public trial, notice of the accusations,

3

compulsory process for obtaining witnesses in one's favor, and [not] being put in jeopardy twice for the same offense." *Id.* at 523–24. The agency then concluded that Wong's October 3, 2005 adjudication of guilt on a New Jersey disorderly persons offense was a "conviction" under 8 U.S.C. § 1101(a)(48)(A) and that both the New Jersey offense and the second-degree forgery offense for which he stood convicted in New York were crimes involving moral turpitude ("CIMTs") under 8 U.S.C. § 1227(a)(2)(A)(ii). Wong's petition followed.

Having reviewed the record and the law relevant to Wong's challenge, we hold that (1) the BIA's interpretation of "conviction" under 8 U.S.C. § 1101(a)(48)(A) was not arbitrary or capricious, (2) the "minimum constitutional protections" test to ascertain a "conviction" retroactively applies to Wong's case, (3) second-degree forgery in violation of N.Y. Penal Law § 170.10 is a CIMT, and (4) the statutory phrase "crime involving moral turpitude" is not unconstitutionally vague. Accordingly, we **DENY** the petition for review.

## I.    Background

Petitioner Kwok Sum Wong is a native of Hong Kong and citizen of the People's Republic of China. On or about April 19, 1979, he was admitted to the United States as a lawful permanent resident.

4

**A.     Federal Conviction and Initial Removal Proceeding**

On April 11, 1988, Wong was convicted in the United States District Court for the Eastern District of New York of conspiracy to import heroin, in violation of 21 U.S.C. § 963, for which he received a sentence of imprisonment of one year and one day. In July of the same year, the government commenced deportation proceedings against him based on this federal drug conviction. On January 10, 1989, an IJ granted Wong a waiver of deportation under former section 212(c) of the INA, 8 U.S.C. § 1182(c) (1994) (repealed 1996).

**B.     State Convictions and Subsequent Removal Proceeding**

Wong went on to commit two additional offenses under state law. *First*, on October 3, 2005, Wong pleaded guilty in New Jersey Superior Court to the disorderly persons offense of theft by deception, in violation of N.J. Stat. Ann. § 2C:20-4. He was ordered to pay a $200 fine for this offense. *Second*, on March 27, 2006, Wong pleaded guilty in New York Supreme Court to forgery in the second degree, in violation of N.Y. Penal Law § 170.10. For this offense, he was sentenced to five years' probation and ordered to pay a $1,000 fine.

On September 28, 2011, the Department of Homeland Security again charged Wong with being removable for "hav[ing] been convicted of two crimes involving moral turpitude" "not arising out of a single scheme of criminal

5

misconduct." 8 U.S.C. § 1227(a)(2)(A)(ii).[1] Wong moved to terminate his removal proceedings, arguing that his New Jersey disorderly persons offense was not a "conviction" under 8 U.S.C. § 1101(a)(48)(A), for a "crime," as stated in 8 U.S.C. § 1227(a)(2)(A)(ii). He further argued that neither of his state offenses involved moral turpitude.

On February 10, 2012, the IJ sustained Wong's removability. Wong subsequently appealed, and the BIA issued its first decision, dated May 15, 2012, affirming the IJ's determination that Wong was removable under section 1227(a)(2)(A)(ii) because (1) the New Jersey disorderly persons offense resulted in a "conviction" under 8 U.S.C. § 1101(a)(48)(A) and (2) both of his state offenses were crimes involving moral turpitude. *See generally In re Kwok Sum Wong*, No. A036 850 251 (B.I.A. May 15, 2012).

Subsequently, Wong petitioned this Court for review of the BIA's decision. Upon the parties' stipulation, this Court remanded the case to the BIA for further consideration of whether New York's second-degree forgery offense was categorically a CIMT. Thereafter, the BIA remanded the proceedings to the IJ, who

---

[1] As detailed below, section 1227(a)(2)(A)(ii) makes "[a]ny alien who at any time after admission is convicted of two or more crimes involving moral turpitude . . . deportable," and 8 U.S.C. § 1101(a)(48)(A) defines "conviction," in relevant part, as "a formal adjudication of guilt of the alien entered by a court."

answered in the affirmative. Wong then appealed that decision to the BIA, which, on March 20, 2018, dismissed the appeal for the same reasons set forth in its May 2012 decision. *See generally In re Kwok Sum Wong*, A036 850 251 (B.I.A. Mar. 20, 2018). Wong petitioned this Court for review.

## C.     This Court's Prior Decision

On June 16, 2020, this Court granted Wong's petition, identifying several concerns with the BIA's analysis of Wong's New Jersey disorderly persons offense. *First*, we noted the lack of explanation as to how the BIA balanced the factors it applied to determine what constituted a "conviction" under section 1101(a)(48)(A). *See Kwok Sum Wong v. Barr*, 818 F. App'x 44, 46–47 (2d Cir. 2020). *Second*, we observed that it was unclear "if the BIA . . . considered whether the disorderly persons proceeding[] was criminal in nature under the governing laws of the prosecuting jurisdiction," which was a "key requirement" under *In re Eslamizar*, 23 I. & N. Dec. 684 (B.I.A. 2004). *Id.* at 47 (internal quotation marks omitted). *Finally*, we were "uncertain" how the BIA decided that "Wong's offense was a CIMT when the offense was not a crime under New Jersey law." *Id.*; *see also* N.J. Stat. Ann. §§ 2C:1-4(b)(1), 2C:20-2(b)(4)(a). Accordingly, we remanded the case to the BIA for it to "clarify these matters." *Kwok*, 818 F. App'x at 48.

7

**D. The BIA's Decision on Remand**

On March 30, 2022, the BIA issued the challenged precedential decision, which again dismissed Wong's appeal of the IJ's removal order. To begin, the BIA explained that "[t]he term 'conviction' is defined, in pertinent part, as a 'formal judgment of guilt . . . entered by a court.'" *Matter of Wong*, 28 I. & N. Dec. at 520 (quoting 8 U.S.C. § 1101(a)(48)(A)). It then reiterated that "the phrase 'judgment of guilt' refers to 'a judgment *in a criminal proceeding*.'" *Id.* (quoting *Eslamizar*, 23 I. & N. Dec. at 687). Acknowledging that courts had adopted "differing interpretations" of its precedents concerning what constitutes such a proceeding, the BIA sought to "clarify the conditions that make a [s]tate proceeding criminal in nature for purposes of section [1]101(a)(48)(A)." *Id.* at 523.

The BIA held that a "genuine" criminal proceeding is one in which the accused is afforded "minimum constitutional protections" – "which are appliable without limitation in all criminal prosecutions" and "without which criminal penalties cannot constitutionally be imposed." *Id.* at 523–24. It identified these minimum constitutional protections as the requirement of "proof beyond a reasonable doubt" and "the rights to confront one's accuser, a speedy and public trial, notice of the accusations, compulsory process for obtaining witnesses in one's favor, and [not to be] put in jeopardy twice for the same offense." *Id.* The BIA

8

further clarified that state labels as to whether an offense is a "crime" "may be useful[,] but [are] not dispositive." *Id.* at 525 (internal quotation marks omitted). Finally, the BIA also explained that whether "an accused" is "expose[d]" to "*criminal* penalties" – as opposed to "*civil* disabilities" or "disadvantage[s]" – is another "focus" of the section 1101(a)(48)(A) inquiry. *Id.* at 525–26 (emphasis added).

Applying this test to Wong's case, the BIA observed that Wong's disorderly persons offense exposed him to criminal penalties, including up to six months' imprisonment. *See* N.J. Stat. Ann. § 2C:43-8. The BIA also determined that, before Wong was subjected to any such penalty, the state of New Jersey had provided him with the specified "minimum constitutional protections" and, thus, he had been "convicted" for purposes of sections 1101(a)(48)(A) and 1227(a)(2)(A)(ii). *See Matter of Wong*, 28 I. & N. Dec. at 526–27. The BIA then concluded that Wong's convictions for theft by deception under New Jersey law and for second-degree forgery under New York law were both CIMTs. *Id.* at 527–28. For these reasons, the BIA dismissed Wong's appeal. *Id.* at 528.

This timely petition followed. We have jurisdiction under 8 U.S.C. § 1252.

9

## II.    Discussion

Wong argues that the BIA's adoption of the "minimum constitutional protections" test was arbitrary and capricious because (1) the test did not account for state-law factors, such as state classifications of offenses and the disabilities flowing from such classifications and (2) the BIA failed to "address how a disorderly persons offense could constitute a '*crime[]* involving moral turpitude'" under section 1227(a)(2)(A)(ii).  Wong Br. at 19.  We disagree.

### A.    *Chevron* Review

"Whether a conviction qualifies as a ground for removal under the INA is a legal question that is reviewed *de novo*."  *Vasquez v. Garland*, 80 F.4th 422, 428 (2d Cir. 2023).  But to the extent this question requires us to construe a provision of the INA, our review follows the two-step framework set forth in *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984).[2]  *See id*.  Under this framework, we first ask "whether Congress has directly spoken to the precise question at issue."  *Chevron*, 467 U.S. at 842.  If Congress's intent is clear, we "must give effect to the unambiguously expressed intent of Congress."  *Id*. at 843.

---

[2] Although the Supreme Court appears poised to revisit its decision in *Chevron* later this term, *see Loper Bright Enters., Inc. v. Raimondo*, 45 F.4th 359 (D.C. Cir. 2022*), cert. granted in part sub nom. Loper Bright Enters. v. Raimondo*, 143 S. Ct. 2429 (2023), it remains law that is binding upon this Court.

If, however, "the statute is silent or ambiguous with respect to the specific issue, the question for th[is] [C]ourt is whether the agency's answer is based on a permissible construction of the statute." *Id.*

For the reasons set forth below, we hold that the BIA's decision warrants *Chevron* deference because the term "conviction" under 8 U.S.C. § 1101(a)(48)(A) is ambiguous and the BIA's interpretation of that term is reasonable. We further hold that the BIA's retroactive application of its "minimum constitutional protections" test was appropriate. As a result, we conclude that Wong's disorderly persons offense under New Jersey law constituted a "conviction" for a "crime" for purposes of removal under 8 U.S.C. § 1227(a)(2)(A)(ii).

### 1. *Chevron* Step One

The INA provides that "[a]ny alien who at any time after admission is convicted of two or more crimes involving moral turpitude, not arising out of a single scheme of criminal misconduct, . . . is deportable." 8 U.S.C. § 1227(a)(2)(A)(ii). In turn, the INA defines "conviction" as:

> a formal judgment of guilt of the alien entered by a court or, if adjudication of guilt has been withheld, where –
> (i) a judge or jury has found the alien guilty or the alien has entered a plea of guilty or *nolo contendere* or has admitted sufficient facts to warrant a finding of guilt, and
> (ii) the judge has ordered some form of punishment, penalty, or restraint on the alien's liberty to be imposed.

11

*Id.* § 1101(a)(48)(A).

As an initial matter, we hold that the meaning of "conviction" under 8 U.S.C. § 1101(a)(48)(A) is ambiguous at step one of the *Chevron* analysis because it is not clear what Congress intended by using the phrase "a formal judgment of guilt." *See Avila v. Att'y Gen.*, 82 F.4th 250, 257 (3d Cir. 2023) ("Both our court and the BIA have acknowledged that [section] 1101(a)(48)(A) is ambiguous at step one of *Chevron*'s two-step analysis." (citing *In re Eslamizar*, 23 I. & N. Dec. at 686–87)); *cf. Brathwaite v. Garland*, 3 F.4th 542, 550 (2d Cir. 2021) (concluding that IIRIRA's definition of "conviction," as used in the INA, was "sufficiently ambiguous to warrant *Chevron* analysis" as to whether a conviction needed to be final before a noncitizen could be subject to removal).

### 2.     *Chevron* Step Two

At step two of the *Chevron* analysis, we defer to any reasonable interpretation adopted by the BIA. *See Oppedisano v. Holder*, 769 F.3d 147, 150 (2d Cir. 2014). An interpretation is reasonable so long as it is not "arbitrary, capricious, or manifestly contrary to the statute." *Adams v. Holder*, 692 F.3d 91, 95 (2d Cir. 2012) (quoting *Chevron*, 467 U.S. at 844). The BIA's interpretation of section 1101(a)(48)(A) is reasonable and therefore entitled to deference.

In its challenged decision, the BIA first analyzed three prior decisions in which it had addressed whether a state offense constituted a "conviction" under section 1101(a)(48)(A). *First*, the BIA reviewed *Eslamizar*, where the agency had concluded that respondent's adjudication of guilt for third-degree theft, which was labeled a "violation" but not a "crime" under an Oregon statute, did not amount to a conviction in a "true criminal proceeding" because it was made "under the lesser standard of a preponderance of the evidence" rather than proof beyond a reasonable doubt. *Eslamizar*, 23 I. & N. Dec. at 687–88; *see Matter of Wong*, 28 I. & N. Dec. at 520–21. *Second*, the BIA reviewed *Rivera-Valencia*, in which the agency had held "that a general court-martial is a 'criminal' proceeding under the governing laws of the United States" resulting "in the entry of a formal judgment of [petitioner's] 'guilt' beyond a reasonable doubt." *Matter of Rivera-Valencia*, 24 I. & N. Dec. 484, 486–88 (B.I.A. 2008); *see Matter of Wong*, 28 I. & N. Dec. at 521. *Finally*, the BIA reviewed *Cuellar-Gomez*, where the agency had held that an adjudication of guilt for misdemeanor possession of marijuana in a Kansas municipal court constituted a "conviction" in a "genuine criminal proceeding" under the INA because – although respondent was at no risk of imprisonment and was not entitled to a jury trial or to appointment of counsel – he had a right to

13

appeal a guilty verdict for a trial *de novo* before a jury in a state district court. *Matter of Cuellar-Gomez*, 25 I. & N. Dec. 850, 851–54 (B.I.A. 2012); *see Matter of Wong*, 28 I. & N. Dec. at 521–22.

Next, the BIA noted the "divergent approaches" taken by courts interpreting these precedents. *Matter of Wong*, 28 I. & N. Dec. at 523. While the Eighth and Tenth Circuits had read these precedents narrowly "as merely highlighting that proof beyond a reasonable doubt is necessary for a proceeding to be of a criminal nature," the Second and Third Circuits had expressed uncertainty as to whether a requirement for proof beyond a reasonable doubt was dispositive or whether and how other factors should be weighed. *Id.* at 522 (citing *Rubio v. Sessions*, 891 F.3d 344, 350 (8th Cir. 2018); *Batrez Gradiz v. Gonzalez*, 490 F.3d 1206, 1208 (10th Cir. 2007); *Castillo v. Att'y Gen. U.S.*, 729 F.3d 296, 305 (3d Cir. 2013); *Kwok Sum Wong*, 818 F. App'x at 47).

Drawing on its prior decisions, the BIA then delineated the conditions necessary and sufficient for an adjudication to qualify as a criminal "conviction" under section 1101(a)(48)(A). Specifically, it determined that an offense is only criminal in nature, and thus a "conviction" for removal purposes, when a noncitizen is afforded "minimum constitutional protections," which include a

14

finding of guilt by "proof beyond a reasonable doubt" and "the rights to confront one's accuser, a speedy and public trial, notice of the accusations, compulsory process for obtaining witnesses in one's favor, and [not] being put in jeopardy twice for the same offense." *Id.* at 523–24.

The BIA offered several rationales for this approach. *First*, it reasoned that this approach would promote uniformity because the enumerated "minimum constitutional protections" "represent[ed] the constitutional floor of criminal procedure," and thus were "applicable without limitation in all criminal prosecutions."[3] *Id.* at 524. This comports with our decision in *Saleh v. Gonzales*, which explained that "uniformity [i]n the enforcement of immigration laws" was one of Congress's goals in passing the 1996 amendments to the INA, which "broaden[ed]" the definition of "conviction" under section 1101(a)(48)(A). 495 F.3d 17, 24 (2d Cir. 2007). *Second*, the BIA reiterated its long-standing position that "whether a conviction exists for purposes of a federal statute is a question of federal law and should not depend on the vagaries of state law." *Matter of Wong*,

---

[3] Notably, the BIA was careful to avoid inclusion of "contingent rights . . . not required in every criminal proceeding," *i.e.*, the right to a jury trial, the right to an indictment by a grand jury, and the right to state-appointed counsel, in its list of "minimum constitutional protections," since "their absence cannot be dispositive with respect to whether a particular proceeding is criminal in nature." *Matter of Wong*, 28 I. & N. Dec. at 524.

15

28 I. & N. Dec. at 523 (quoting *Matter of Ozkok*, 19 I. & N. Dec. 546, 551 n.6 (B.I.A. 1988)). *Third*, the BIA made it a priority to develop a bright-line rule that is "administrable."[4] *See id.* at 528 n.5; *see also Mayo Found. for Med. Educ. & Rsch. v. United States*, 562 U.S. 44, 59 (2011) (explaining that an agency may consider administrability in interpreting an ambiguous statute).

We are persuaded that the agency's interpretation of section 1101(a)(48)(A) was reasonable. *Cf. Zhao*, 265 F.3d at 93 (explaining that an agency acts "in an arbitrary and capricious manner" when it "provides no rational explanation" for its decision or its decision is "devoid of any reasoning"). In so concluding, we join the Third Circuit, which likewise acknowledged the "reasonable[ness]" of the BIA's decision and noted how the agency offered "principled" justifications for its new test, which "promotes uniformity" and "is tethered to the procedural

---

[4] On this point, Wong faults the BIA for adopting an "internally inconsistent" rule that "leads to perverse results" because it merely shifts the focus of its inquiry from state substantive law to state procedural law. Wong Br. at 38 (capitalization standardized). But Wong overlooks the fact that the BIA's rule requires that protections afforded by the state be "coextensive with the parallel Federal rights" and thus apply to criminal proceedings across all states. *Matter of Wong*, 28 I. & N. Dec. at 525–26. Wong also insists that states might offer greater procedural protections, even where they are not constitutionally required. That may be true, but the BIA explicitly acknowledged this possibility, and explained that the agency was balancing its interest in uniformity against its competing interest in administrability. *See id.* at 528 n.5. Thus, it cannot be said that the BIA's decision in this regard was without a "rational explanation," *Zhao v. U.S. Dep't of Just.*, 265 F.3d 83, 93 (2d Cir. 2001), or otherwise not "reasonable," *Adams*, 692 F.3d at 95.

safeguards mandated by the U.S. Constitution." *Avila*, 82 F.4th at 260–61 (citing *Matter of Wong*, 28 I. & N. Dec. at 524–25).

Wong responds that the BIA's decision was arbitrary and capricious because it failed to consider state classifications and the consequences that state legislatures set for offenses. This is belied by the BIA's explicit statement that agency "analysis should focus" on two points necessarily implicating state law: (1) "whether the judgment *exposes the accused to criminal penalties*," and (2) "whether the procedure used to arrive at that judgment *conforms to the minimum constitutional requirements for criminal prosecutions*." *Matter of Wong*, 28 I. & N. Dec. at 525–26 (emphasis added). An affirmative answer to the first question identifies the offense as a *crime* for purposes of section 1227(a)(2)(A)(ii). A further affirmative answer to the second question identifies the state's adjudication of guilt for that as a *conviction* for purposes of section 1101(a)(48)(A). Thus, state law and procedures can be relevant to federal removal determinations. But, as the BIA explained, while "[h]ow the [s]tate defines or labels the offense may be useful," it "is not dispositive" in determining whether offenses are "convictions" for removal purposes. *Matter of Wong*, 28 I. & N. Dec. at 525.

17

Insofar as the BIA's "minimum constitutional protections" test reduces the import of state offense classifications, we agree with the Third Circuit that the BIA "announc[ed] a principled reason for this departure." *Avila*, 82 F.4th at 260 (internal quotation marks omitted). Specifically, the "test ensure[s] that non-citizens will be treated uniformly regardless of the state of their conviction because 'substantive constitutionality will not vary from State to State.'" *Avila*, 82 F.4th at 261 (quoting *Matter of Wong*, 28 I. & N. Dec. at 526). That Wong would prefer state classifications to be weighed more heavily does not make the agency's contrary decision unreasonable. *Cf. Mei Juan Zheng v. Holder*, 672 F.3d 178, 183 (2d Cir. 2012) ("[In] defer[ring] to an agency's interpretation of a statute as reasonable, this Court need not conclude that the agency construction was the only one it permissibly could have adopted . . . ." (internal quotation marks omitted)).

Nor is a different conclusion warranted by any possible tension among the various factors that the BIA relied upon in carrying out its section 1101(a)(48)(A) inquiry. For example, the BIA emphasized that "a jurisdiction's application of [the minimum constitutional] safeguards" is both a sufficient *and* necessary condition for "defin[ing] whether a proceeding is criminal in nature," *Matter of Wong*, 28 I. & N. Dec. at 525, while also indicating that other factors – such as how

18

a state labels offenses and "whether the judgment exposes the accused to criminal penalties" – still bear on the question of what constitutes a "conviction" under the INA, *id.* at 525–26. But the most natural way to reconcile these two statements is to read them to say that these other factors, along with the ones that the BIA set forth in *Eslamizar*, may be consulted to determine whether "minimum constitutional protections" are present. *See Avila*, 82 F.4th at 261–62 ("[W]e interpret [the BIA's discussion of state classifications] as nothing more than stating that a decision-maker may look to a jurisdiction's classification of a given offense as an aid to determining the constitutional protections that flow from it."). Thus, contrary to Wong's contentions, IJs may still consider state classifications and criminal penalties to the extent they shed light on whether constitutionally guaranteed criminal procedures are afforded for any given offense.

Having been persuaded that the BIA's test is reasonable, we apply it to the instant case and conclude that Wong was twice "convicted" of "crimes" for removal purposes under 8 U.S.C. §§ 1101(a)(48)(A) and 1227(a)(2)(A)(ii). For starters, because his New Jersey disorderly persons offense exposed him to a possible six-month prison term, it is correctly recognized as a crime for purposes of section 1227(a)(2)(A)(ii). *Cf. United States v. Ward*, 448 U.S. 242, 249 (1980)

(analyzing whether a civil penalty "provided for sanctions so punitive as to transform what was clearly intended as a civil remedy into a criminal penalty" (alterations and internal quotation marks omitted)). In addition, New Jersey law requires that disorderly persons offenses be proved beyond a reasonable doubt, *see* N.J. Stat. Ann. §§ 2C:1-13(a), 2C:1-14(k), while protecting against double jeopardy and guaranteeing a defendant's rights to confrontation, a speedy and public trial, notice of accusations, and compulsory process. *See* N.J. Const. art I, ¶¶ 10–11. This leaves no question that Wong was "convicted" under sections 1101(a)(48)(A) and 1227(a)(2)(A)(ii), since the state provided "all of the constitutionally[ ]mandated rights of criminal procedure" "that apply without limitation" to those charged with theft by deception under N.J. Stat. Ann. § 2C:20-4. *Matter of Wong*, 28 I. & N. Dec. at 526–27.

## B.     Retroactive Application

Wong argues in the alternative that even if the BIA's interpretation was not arbitrary and capricious, it should not have applied retroactively to his case. "Agencies may create new rules through adjudication, but the retroactive application of the resulting rules 'must be balanced against the mischief of producing a result which is contrary to a statutory design or to legal and equitable principles.'" *Obeya v. Sessions*, 884 F.3d 442, 445 (2d Cir. 2018) (quoting *SEC v.*

20

*Chenery Corp.*, 332 U.S. 194, 203 (1947)). "The more an agency acts like a judge[,] applying preexisting rules of general applicability to discrete cases and controversies[,] the stronger the case may be for retroactive application of the agency's decision." *Marquez v. Garland*, 13 F.4th 108, 111–12 (2d Cir. 2021) (alterations and internal quotation marks omitted). But "the more an agency acts like a legislator[,] announcing new rules of general applicability[,] the stronger the case becomes for limiting application of the agency's decision to future conduct." *Id.*

In determining whether to retroactively apply an agency decision, we consider the following factors:

> (1) whether the case is one of first impression, (2) whether the new rule presents an abrupt departure from well-established practice or merely attempts to fill a void in an unsettled area of law, (3) the extent to which the party against whom the new rule is applied relied on the former rule, (4) the degree of the burden which a retroactive order places on a party, and (5) the statutory interest in applying a new rule despite the reliance of a party on the old standard.

*Lugo v. Holder*, 783 F.3d 119, 121 (2d Cir. 2015).

In this case, the government does not contest that the first and fourth factors in this balancing test weigh against retroactive application of the "minimum constitutional protections" test because this is not the first case to construe the term

21

"conviction" under section 1101(a)(48)(A), and removal from the United States would "substantially burden" Wong. *Marquez*, 13 F.4th at 112. Nevertheless, this Court has typically treated "the second and third [*Lugo*] factors" as "the most significant [ones]." *Id.* And in Wong's case, the second, third, and fifth factors all favor retroactive application of the BIA's test.

With regard to the second *Lugo* factor, the BIA issued its decision to "clarify" what factors should inform an IJ's decision concerning whether an offense is a "conviction." *Matter of Wong*, 28 I. & N. Dec. at 522–23. Without question, the BIA's decision established a bright-line rule that "minimum constitutional protections" are both sufficient and necessary conditions for determining whether an adjudication is a "conviction" under section 1101(a)(48)(A). *Id.* at 523–25. But in doing so, the BIA simply extended the principles that animated its earlier decision in *Eslamizar*, which already instructed IJs to consider "constitutional safeguards normally attendant upon a criminal adjudication." 23 I. & N. Dec. at 686, 687; *see Marquez*, 13 F.4th at 113–14 (concluding that second *Lugo* factor favored retroactive application because BIA decision "simply answered questions left open" by its prior decision). The BIA further indicated that other factors identified in prior precedents – such as the applicable burden of proof, criminal

22

penalties, and state classifications – were relevant to the extent they demonstrated that "minimum constitutional protections" applied to a given offense. *See Matter of Wong*, 28 I. & N. Dec. at 524–26. Accordingly, the BIA's decision was not an "abrupt departure from well-established practice" but rather an "attempt[] to fill a void in an unsettled area of law." *Lugo*, 783 F.3d at 121; *see Kwok Sum Wong*, 818 F. App'x at 47 (explaining that BIA's decisions tracing back to *Eslamizar* "have not definitively clarified whether the standard of proof is the dispositive factor or how other factors enter into the mix").[5]

The third *Lugo* factor also weighs in favor of retroactive application. The relevant inquiry boils down to whether Wong's "reli[ance] on the old law . . . would have been reasonable." *Obeya*, 884 F.3d at 448–49. Here, Wong pleaded guilty to the New Jersey disorderly persons offense after the BIA had issued its decision in *Eslamizar*, which Wong cites as the source of the "old standard" on

---

[5] Although the Third Circuit characterized *Matter of Wong* as a "depart[ure] from the BIA's prior decisions" regarding the weight to be accorded state law, *Avila*, 82 F.4th at 260, it cannot be said that it was an "*abrupt* departure" for purposes of our retroactivity analysis, *Lugo*, 783 F.3d at 121 (emphasis added). Indeed, the Third Circuit rejected petitioner's contention that the agency had "significantly departed from the Board's precedent in *Eslamizar* . . . while failing to announce a principled reason for such departures." *Avila*, 82 F.4th at 257 (alterations and internal quotation marks omitted). The Third Circuit held that "the Board's decision in *Wong* [wa]s neither unreasonable nor in conflict with [its] precedent" and therefore retroactively applied the BIA's test to the New Jersey disorderly persons offense that the petitioner committed in that case. *Id.* at 262, 264.

which he relied.  *Lugo*, 783 F.3d at 121.  But while *Eslamizar* held  that proof beyond a reasonable doubt was needed in order for a proceeding to produce a "conviction," it also suggested a broader inquiry into whether there were "constitutional safeguards normally attendant upon a criminal adjudication." 23 I. & N. Dec. at 686–88.  This may have left some uncertainty over whether and how those factors should be weighed to determine the meanings of the terms "conviction," "judgment of guilt," and "criminal proceeding" for purposes of the section 1101(a)(48)(A) inquiry.  *See Kwok Sum Wong*, 818 F. App'x at 47–48.  But such uncertainty does not demonstrate an established rule favorable to Wong on which he could be said to have reasonably relied.  *See Obeya*, 884 F.3d at 448; *Marquez*, 13 F.4th at 114 (explaining that because BIA had not addressed issue under review in published decision, petitioner could "point to no rule upon which he could reasonably have relied when entering his . . . guilty plea")

The fifth and final *Lugo* factor also supports retroactive application.  That is because the government's interest in developing uniform federal immigration laws trumps any reliance interests that Wong might assert.  *Cf. Marquez*, 13 F.4th at 114 (holding that the fifth factor cut against petitioner where he "ha[d] not demonstrated reliance on an established rule" and the "government assert[ed] its

24

strong interest in maintaining the uniformity of immigration law" (internal quotation marks omitted)). For all of these reasons, we conclude that the BIA did not err in retroactively applying its "minimum constitutional protections" test.

**C.     Wong's Alleged CIMTs**

Having determined that Wong's guilty plea to theft by deception under New Jersey law resulted in a "conviction" for purposes of his removability under the INA, we now turn to whether Wong's state offenses constitute CIMTs. Section 237 of the INA provides that a noncitizen "who at any time after admission is convicted of two or more crimes [that] involv[e] moral turpitude, [but are] not arising out of a single scheme of criminal misconduct[,] is deportable." 8 U.S.C. § 1227(a)(2)(A)(ii). "We afford *Chevron* deference to the BIA's construction of undefined statutory terms such as 'moral turpitude' because of the BIA's expertise applying and construing immigration laws." *Rodriguez v. Gonzales*, 451 F.3d 60, 63 (2d Cir. 2006). But at the same time, "we review *de novo* the BIA's finding that a particular crime of conviction falls within its definition of a CIMT" because "the BIA has no particular expertise in construing federal and state criminal statutes." *Id.* That is why we defer to the BIA's view of what "amounts to a CIMT," but "we review *de novo* the BIA's finding that a petitioner's crime of conviction *contains* those elements which have been properly found to constitute a CIMT." *Gill v.*

*I.N.S.*, 420 F.3d 82, 89 (2d Cir. 2005); *see also Rodriguez*, 451 F.3d at 63 (applying this approach).

To decide whether a conviction is for a CIMT, we employ what is known as the "categorical approach." *Gill*, 420 F.3d at 89 (internal quotation marks omitted). Under this approach, our focus is on "the minimum criminal conduct necessary to satisfy the essential elements of the crime," *Mendez v. Mukasey*, 547 F.3d 345, 348 (2d Cir. 2008), and "the intrinsic nature of the offense[,] rather than on the factual circumstances surrounding any particular violation," *Gill*, 420 F.3d at 89 (internal quotation marks omitted).

### 1. New Jersey Conviction

We begin by observing that Wong has forfeited the issue of whether the BIA correctly categorized his New Jersey offense as a CIMT. It is well-settled that "issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed [forfeit]ed." *Tolbert v. Queens Coll.*, 242 F.3d 58, 75 (2d Cir. 2001) (internal quotation marks omitted). "[T]o properly present an issue on appeal," "an appellant . . . must state the issue *and* advance an argument." *Gross v. Rell*, 585 F.3d 72, 95 (2d Cir. 2009) (internal quotation marks omitted).

With respect to his New Jersey disorderly persons offense, Wong challenges only whether theft by deception is a "conviction" under section 1101(a)(48)(A).

26

He has not raised the separate issue of whether this offense categorically constitutes a crime *involving moral turpitude* under section 237 of the INA. Indeed, Wong's opening brief does not even "list [this] point as one of the issues on appeal." *United States v. Restrepo*, 986 F.2d 1462, 1463 (2d Cir. 1993); *see* Wong Br. at 5–6. Nor does he *"advance"* any arguments as to why the offense does not categorically involve moral turpitude. *Gross*, 585 F.3d at 95 (emphasis added). It therefore follows that, if "[m]erely mentioning" an issue in a brief is insufficient to preserve it for appellate review, *id.*, then omitting an issue altogether from an appellant's brief is clearly enough to constitute forfeiture of that issue, *Tolbert*, 242 F.3d at 75. On this point, we heed the Supreme Court's warning that courts "should not[] sally forth each day looking for wrongs to right," but rather "decide only questions presented by the parties." *United States v. Sineneng-Smith*, 140 S. Ct. 1575, 1579 (2020).[6]

## 2.    New York Conviction

Next, we conclude that second-degree forgery under N.Y. Penal Law § 170.10 is categorically a CIMT. Under New York law, "[a] person is guilty of

---

[6] To the extent that Wong attempts to raise this argument for the first time in his reply brief, *see* Wong Reply Br. at 16 ("Mr. Wong's New Jersey judgment is not a 'conviction' for a *'crime involving moral turpitude.'*" (capitalization standardized)), we reject such an attempt, *see Conn. Bar Ass'n v. United States*, 620 F.3d 81, 91 n.13 (2d Cir. 2010).

forgery in the second degree when, with intent to defraud, deceive or injure another, he falsely makes, completes or alters a written instrument which is or purports to be, or which is calculated to become or to represent if completed" one of the documents listed under the statute.  N.Y. Penal Law § 170.10.[7]

We start by affording deference to the BIA's construction of the term "moral turpitude."  *See Rodriguez*, 451 F.3d at 63; *Gill*, 420 F.3d at 89.  In general terms, the BIA has stated that a CIMT has two essential elements:  (1) a culpable mental state, *i.e.*, intent, and (2) reprehensible conduct, *i.e.*, conduct that is "inherently base, vile, or depraved, and contrary to the accepted rules of morality and the duties owed between persons or to society in general."  *Mendez v. Barr*, 960 F.3d 80, 84 (2d Cir.

---

[7] The documents covered by the New York statute are:

> 1. A deed, will, codicil, contract, assignment, commercial instrument, credit card, as that term is defined in subdivision seven of section 155.00, or other instrument which does or may evidence, create, transfer, terminate or otherwise affect a legal right, interest, obligation or status; or
> 2. A public record, or an instrument filed or required or authorized by law to be filed in or with a public office or public servant; or
> 3. A written instrument officially issued or created by a public office, public servant or governmental instrumentality; or
> 4. Part of an issue of tokens, public transportation transfers, certificates or other articles manufactured and designed for use as symbols of value usable in place of money for the purchase of property or services; or
> 5. A prescription of a duly licensed physician or other person authorized to issue the same for any drug or any instrument or device used in the taking or administering of drugs for which a prescription is required by law.

N.Y. Penal Law § 170.10.

28

2020) ("*Mendez/Barr*") (internal quotation marks omitted); *see id.* at 89 (Sullivan, J., dissenting) (quoting *Matter of Silva-Trevino*, 26 I. & N. Dec. 826, 833 (B.I.A. 2016)). The latter includes "act[s] which [are] *per se* morally reprehensible and intrinsically wrong . . ., so it is the nature of the act[s] [themselves] and not the statutory prohibition of [them] which renders [the] crime[s] one[s] of moral turpitude." *Rodriguez*, 451 F.3d at 63 (internal quotation marks omitted).

Additionally, this Court has deferred to the BIA's other articulations of what constitutes a CIMT. *First*, this Court has shown deference to the BIA's determination that a crime involving fraudulent intent is generally a CIMT. *Cf. Gill*, 420 F.3d at 89 ("Crimes committed knowingly or intentionally generally have been found, on the categorical approach, to be CIMTs."); *Michel v. I.N.S.*, 206 F.3d 253, 263 (2d Cir. 2000) (noting that the "BIA['s] . . . long-standing position [is] that, where knowledge is a necessary element of a crime under a particular criminal statute, moral turpitude inheres in that crime") (collecting cases). *Second*, we have found to be reasonable the BIA's position that crimes requiring an intent to deceive plus an intent to disrupt a government function are ones that involve moral turpitude. *See Rodriguez*, 451 F.3d at 64 (holding that fraud or deceit with "intent to impair the efficiency and lawful functioning of the government" was

29

"sufficient to categorize a crime as a CIMT"). *And third*, we have held that, generally speaking, crimes of deceit involve moral turpitude where there is an intent to obtain some benefit or cause a detriment. *See Mendez/Barr*, 960 F.3d at 88 (explaining that "deceit must be paired with an intent to wrongfully extract some benefit or to cause some detriment" for a crime to be one involving moral turpitude).

In this case, Wong posits that second-degree forgery can be committed not only with an intent to *defraud*, but also with an intent to *deceive* or *injure*, and thus – under the categorical approach – there may be scenarios where the offense could be carried out without the intent to exact a benefit, cause an injury, or interfere with government functions. But while this Court has at times drawn a distinction between the intent to deceive and the intent to defraud when determining whether a particular offense is a CIMT, *see, e.g.*, *Ahmed v. Holder*, 324 F. App'x 82, 84 (2d Cir. 2009), it is difficult to imagine how the intent to deceive coupled with the act of making or altering a written instrument that is, or purports to be, one of the enumerated documents in the statute could not necessarily involve an intent to reap a benefit, cause a detriment, or impede government functions, *cf. Mendez/Barr*, 960 F.3d at 88, *Jang v. Garland*, 42 F.4th 56, 63–64 (2d Cir. 2022).

30

Simply put, second-degree forgery requires a culpable mental state and reprehensible conduct that, by its very nature, runs "contrary to the accepted rules of morality and the duties owed between persons or to society in general." *Rodriguez*, 451 F.3d at 63 (internal quotation marks omitted).

If there were any doubt on this score, our recent decision in *Vasquez* squarely forecloses Wong's challenge. In that case, we held that criminal possession of a forged instrument in the third degree, in violation of N.Y. Penal Law § 170.20, was categorically a CIMT. In reaching this conclusion, we explained that "the state[-]law conviction on which the agency premised [the petitioner's] removal include[d] 'fraud as an ingredient,'" *Vasquez*, 80 F.4th at 435 (quoting *Jordan v. De George*, 341 U.S. 223, 232 (1951)), because the statute "criminalize[d] uttering or possessing a forged instrument 'with knowledge that it is forged and with *intent to defraud, deceive or injure another*,'" *id.* (quoting N.Y. Penal Law § 170.20) (emphasis added). Likewise, this Court held in an unpublished decision that third-degree forgery under N.Y. Penal Law § 170.05 – which mirrors the language for second-degree forgery but omits the requirement that the forgery be connected to one of the categories of documents under section 170.10 – is a CIMT. *See Magassouba v. Holder*, 526 F. App'x 66, 69 (2d Cir. 2013). In *Magassouba*, we

relied on the Supreme Court's statement that "[c]rimes in which fraud was an ingredient have always been regarded as involving moral turpitude." *Id.* (quoting *Jordan*, 341 U.S. at 232).[8] We therefore have no trouble concluding today that second-degree forgery in violation of N.Y. Penal Law § 170.10 is categorically, "by definition, and in all instances, . . . a CIMT." *Gill*, 420 F.3d at 89.

### D. Void for Vagueness Doctrine

As a final matter, we reject Wong's challenge that the term "crime involving moral turpitude" under section 237 of the INA is unconstitutionally vague. This argument runs counter to Supreme Court precedent and controlling law of this Circuit. *See Jordan*, 341 U.S. at 232 (concluding that "[t]he phrase 'crime involving moral turpitude' has without exception been construed to embrace fraudulent conduct" and therefore is not a "standard [that is] unconstitutional for vagueness"); *Vasquez*, 80 F.4th at 435–36 (joining other Circuits in holding that "the term 'crime involving moral turpitude' is not unconstitutionally vague" under *Jordan*) (collecting cases).

---

[8] Indeed, our decision today is consistent with those of other Circuits, which have similarly held that "under the[ir] authorities, forgery is regarded as involving moral turpitude" and "fraud has consistently been regarded as such a contaminating component in any crime that American courts have, without exception, included such crimes within the scope of moral turpitude." *Balogun v. Ashcroft*, 270 F.3d 274, 278–79 (5th Cir. 2001) (internal quotation marks and alterations omitted); *see also United States ex rel. McKenzie v. Savoretti*, 200 F.2d 546, 548 (5th Cir. 1952).

### III. Conclusion

Applying the familiar two-step framework under *Chevron*, we recognize the ambiguity that surrounds the term "conviction," as it is defined in 8 U.S.C. § 1101(a)(48)(A), and hold that the BIA adopted a reasonable interpretation of that statutory term in crafting its "minimum constitutional protections" test. Further, we find no error in the agency's decision to retroactively apply this test to Wong's case and its conclusion, after doing so, that he was "convicted" of two "crimes involving moral turpitude" – namely, theft by deception under New Jersey law and second-degree forgery under New York law. 8 U.S.C. §§ 1101(a)(48)(A), 1227(a)(2)(A)(ii). Lastly, Wong's vagueness challenge fails for the simple reason that it is squarely foreclosed by binding precedent. For the foregoing reasons, we **DENY** Kwok Sum Wong's petition for review.